WEIDNER et al., Appellees and Cross–Appellants,

v.

BLAZIC et al., Appellants and Cross–Appellees.

[Cite as *Weidner v. Blazic* (1994), 98 Ohio App.3d 321.]

Court of Appeals of Ohio,
Butler County.

Nos. CA94–03–078, CA94–04–095.

Decided Oct. 31, 1994.

324

*Ruppert, Bronson, Chicarelli & Smith Co., L.P.A., David A. Chicarelli, Gardner, Ewing & Souza* and *C. David Ewing,* for appellees and cross-appellants.

*Charles J. Davis,* for appellants and cross-appellees.

---

JONES, Presiding Judge.

Defendants-appellants and cross-appellees, John P. Blazic, D.D.S., and John P. Blazic, D.D.S., Inc., appeal an order of the Butler County Court of Common Pleas denying their motion for a new trial.

On April 17, 1991, plaintiff-appellee and cross-appellant Bonnie C. Weidner consulted Dr. Blazic, an oral and maxillofacial surgeon, to explore the possibility of dental implants in hopes of relieving the pain Weidner had been suffering for temporomandibular joint ("TMJ") syndrome. At the time of the consultation, Weidner was edentulous, having lost all her teeth to infection and extraction some twenty years earlier. She had, however, been wearing dentures over the years. As a result of having lost her teeth and worn dentures over the years, Weidner's mandible had severely atrophied, resulting in her subsequent TMJ syndrome, for which she had sought, unsuccessfully, treatment for several years. Weidner also suffers from Crohn's disease, which is an inflammation of the bowel.

Blazic suggested a course of treatment for Weidner that included surgery for her TMJ, endosteal implants, and augmentation of her mandible. Endosteal implants are in the form of posts that are placed in holes drilled directly in the patient's mandible. Once the patient's mandible heals, screws are inserted into the posts. A metal bar securing a permanent denture in the patient's mouth is then attached to the screw heads.

On August 7, 1991, Blazic surgically placed five endosteal implants in Weidner's mandible. In doing so, Dr. Blazic drilled too deeply into Weidner's mandible. As a result, the implanted posts pierced the inferior border, or lower edge, of Weidner's mandible and could be felt on the underside of her jaw. Blazic also

augmented the posterior of the mandible by using nonresorbable hydroxylapatite ("HA"), a man-made substance.

Following the surgery, Weidner complained of perpetual pain in the area of her jaw and the surgical site. Indeed, at trial, Weidner testified that the pain was so severe that she was reduced to swallowing food without chewing. She also testified that she was always taking pain medication. At no time, however, was there any clinical sign of failure with the posts.

On January 8, 1992, Weidner saw Dr. Alfred Heller, a dentist practicing solely in dental implantology, for a second opinion. Heller advised Weidner that the implants should be removed and that the resulting holes should be filled with demineralized freeze-dried bone. Heller called Blazic a few days later and expressed his opinion. On January 31, 1992, Blazic surgically removed the implants by drilling them out. He then filled the holes with nonresorbable HA. Following the removal of the implants, Weidner continued to experience pain and to be on pain medication. In February 1992, Weidner complained of knots under her chin.

In April 1992, Weidner returned to see Dr. Heller. Heller eventually proposed, and Weidner agreed, to proceed with a subperiosteal implant. The subperiosteal implant is an alternate form of implant that actually sits on the top of the bone. On May 11, 1992, Heller took an impression of Weidner's jaw to fit the new implant, and surgically removed the HA which had filled the holes. The next day, Heller surgically placed the subperiosteal implant and filled the holes with demineralized freeze-dried bone. Following Heller's surgeries, Weidner experienced several problems, including pain and infection, which Heller attributed to the May 1992 surgeries, Crohn's disease and TMJ. Weidner testified at trial that she felt better overall and that she was able again to chew and eat anything.

On April 5, 1993, Weidner and her husband, Kenneth Weidner, filed a complaint in the trial court, alleging dental malpractice by appellants. The case was tried to a jury between January 31 and February 2, 1994. On February 2, 1994, the jury returned verdicts of $200,000 for Weidner and $25,000 for her husband on his claim of loss of consortium. The jury found that appellants were negligent and that their negligence proximately caused Weidner's injuries and Kenneth Weidner's loss of consortium. On February 7, 1994, appellees filed a motion for prejudgment interest. On February 16, 1994, appellants filed a motion for new trial or, in the alternative, for remittitur. On March 17, 1994, the trial court denied both motions.

Appellants timely filed this appeal and raise six assignments of error. Appellees filed a cross-appeal with respect to the denial of their motion for prejudgment interest.

Appellant's first assignment of error reads as follows:

"The trial court erred to the prejudice of the Defendant/Appellant in permitting Plaintiffs to introduce into evidence the fact that Defendant was on probation from the State Dental Board for intentional misrepresentation and material deception in the course of his practice."

During his cross-examination of Blazic, Weidner's counsel asked, "Doctor, is it a fact that you are on probation as a result of a finding of the Ohio State Dental Association [*sic*] for the intentional misrepresentation and material deception in the course of your practice, is it not, sir?"[1] Blazic answered affirmatively. The trial court, over objection from Blazic's counsel, admitted the evidence pursuant to Evid.R. 608(B). At the end of Dr. Blazic's testimony, the trial court gave the jury the following limiting instruction: "[T]here's the last question given by [Weidner] concerning the probation of Dr. Blazic. And that was for testing the credibility of the witness, and that's the only purpose for which you are to consider it—testing credibility."

Evid.R. 608(B) states the following:

"Specific instances of conduct. Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness, other than conviction of crime as provided in Evid.R. 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if clearly probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness's character for truthfulness or untruthfulness * * *."

Under Evid.R. 608(B), counsel cannot challenge a witness's credibility with evidence of bad moral character. *State v. Shields* (1984), 15 Ohio App.3d 112, 113, 15 OBR 202, 203, 472 N.E.2d 1110, 1112. Counsel may, however, impeach a witness on cross-examination by questions about prior misconduct which relate directly to truthfulness. *Id.* The decision to admit prior misconduct of a witness for impeachment under Evid.R. 608(B) is a matter that rests within the sound discretion of the trial court. *Id.*

---

1. In 1988, Blazic was charged by the Ohio State Dental Board ("OSDB") with twenty counts of "obtaining or attempting to obtain money or anything of value by intentional misrepresentation or material deception in the course of practice" in violation of R.C. 4715.30(A)(2). Three of these counts also charged Blazic with employing a person to practice dentistry who was not licensed to do so in Ohio, in violation of R.C. 4715.19 and R.C. 4715.30(A)(9). After conducting a hearing, the OSDB found nineteen counts to be true. As a result, the OSDB ordered that Blazic's dental license be suspended for thirty days, that Blazic be placed on probation for two years, and that he be required to perform two hundred hours of pro bono service. Blazic appealed the OSDB adjudication order all the way to the Ohio Supreme Court. In 1993, the Supreme Court unanimously affirmed the OSDB order. *Blazic v. Ohio State Dental Bd.* (1993), 66 Ohio St.3d 240, 611 N.E.2d 802.

■ After thoroughly reviewing the record, we find that the trial did not err in allowing Weidner's counsel to cross-examine Blazic about his probationary status with the Ohio State Dental Board. First, on direct examination, Blazic testified that he was licensed to practice in the state of Ohio. Since the Ohio State Dental Board is the agency which monitors and approves dentists for licensing, we find that it was proper to cross-examine Blazic about his probationary status with the board. Furthermore, although the probationary status of Blazic was based on seventeen different instances of conduct for which he was accused of intentional misrepresentation, Weidner's counsel cross-examined Blazic about his probationary status with only one single question and no in-depth exploration.

■ Second, at the end of Blazic's direct examination,[2] his character for truthfulness was clearly in question. Weidner and her husband both testified that Blazic told them that he would place three implants (they found out shortly before Weidner's surgery that Blazic intended instead to place five implants). Both also testified that he did not discuss other types of implants or procedures. Weidner further testified that Blazic did not discuss the possibility that the implants might fail, but talked only about the possible nerve damage normally associated with any surgery. Blazic testified that he told Weidner that he would do four implants. He further testified that he had not only discussed other types of implants or procedures, he had also explained the possibility of implant failure, as well as nerve damage. In light of the foregoing testimonies and after a thorough review of the record, we find that Blazic has failed to show any abuse of the trial court's discretion by the challenged ruling. Appellants' first assignment of error is therefore overruled.

■ Appellants' second assignment of error reads as follows:

"The trial court erred to the prejudice of the Defendant in failing to submit to the jury the interrogatories [*sic*] duly submitted to the court by the Defendant prior to argument."

Prior to arguments, Blazic's counsel submitted to the trial court the following interrogatory: "Do you find from a preponderance of the evidence that Dr. Blazic, in placing implants beneath the inferior border of the Plaintiff's mandible, deviated from an accepted standard of care and treatment. (Check Yes or No)." The court refused to submit the interrogatory to the jury, finding it to be "too vague" and "very confusing to the jury," in that it "just [said] deviated from an accepted standard of care and treatment."

---

**2.** At trial, the parties and witnesses testified in the following order: (1) Weidner, (2) Dr. Lee Ortman, a family dentist testifying, via videotape, on behalf of Weidner, (3) Dr. Heller, (4) Weidner's husband, (5) Dr. Blazic, and (6) Dr. Charles A. Babbush, an oral surgeon testifying as expert witness on behalf of Blazic.

Civ.R. 49(B), which governs verdicts and interrogatories, provides the following: ·

"The court shall submit written interrogatories to the jury, together with appropriate forms for a general verdict, upon request of any party prior to the commencement of argument. Counsel shall submit the proposed interrogatories to the court and to opposing counsel at such time. ·The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, but the interrogatories shall be submitted to the jury in the form that the court approves. The interrogatories may be directed to one or more determinative issues whether issues of fact or mixed issues of fact and law."

██ The Ohio Supreme Court has held that a trial court has a mandatory duty to submit written interrogatories to the jury upon the request of any party. *Ragone v. Vitali & Beltrami, Jr., Inc.* (1975), 42 Ohio St.2d 161, 165, 71 O.O.2d 164, 166, 327 N.E.2d 645, 649. However, Civ.R. 49(B) does not require the trial judge to act as a "mere conduit who must submit all interrogatories counsel may propose." *Id.* The trial court retains discretion to reject proposed interrogatories that are ambiguous, confusing, redundant, or otherwise legally objectionable. *Ramage v. Cent. Ohio Emergency Serv., Inc.* (1992), 64 Ohio St.3d 97, 592 N.E.2d 828, paragraph three of the syllabus. A trial court's decision whether to submit a proposed interrogatory cannot be disturbed on appeal absent a showing that the trial court abused its discretion. *Ragone, supra,* at paragraph one of the syllabus.

██ The purpose of an interrogatory is to " 'test the jury's thinking in resolving an ultimate issue so as not to conflict with its verdict.' " *Freeman v. Norfolk & W. Ry.* (1994), 69 Ohio St.3d 611, 613, 635 N.E.2d 310, 313, quoting *Riley v. Cincinnati* (1976), 46 Ohio St.2d 287, 75 O.O.2d 331, 348 N.E.2d 135. Proper jury interrogatories must address determinative issues. *Ramage, supra,* 64 Ohio St.3d at, 107, 592 N.E.2d at 836. Determinative issues are "ultimate issues which when decided will definitely settle the entire controversy between or among the parties." *Ziegler v. Wendel Poultry Serv., Inc.* (1993), 67 Ohio St.3d 10, 15, 615 N.E.2d 1022, 1028.

After having reviewed the rejected interrogatory, we find that it does not address determinative issues and that it is confusing. In the case at bar, the jury was presented with two distinct but equally important issues of deviation from a standard of care. The first issue was whether it was a deviation to pierce the inferior border of Weidner's mandible. Heller testified that it was a deviation for Blazic to have penetrated the inferior border of the mandible with the implants. Blazic and Dr. Charles A. Babbush, an oral surgeon testifying on behalf of Blazic, testified that it was an accepted practice. The second issue was whether it was a

deviation to fill the holes left by the implants with HA. Dr. Heller testified that it was a deviation for Blazic to use nonresorbable HA to fill the holes left by the implants. Blazic testified that the use of HA was not a deviation. Dr. Babbush testified that both HA and freeze-dried bone were used in oral surgery and that they were both good and acceptable forms of bone graft material. Although the interrogatory proposed by appellants specifically refers to Blazic's procedure of placing implants beneath the inferior border of Weidner's mandible, it does not specify of which standard of care it could be a deviation. Further, the record does not indicate that appellants submitted another interrogatory specifically dealing with Blazic's use of HA to fill the holes in Weidner's mandible. As a result, if submitted, the rejected interrogatory would not have definitely settled the controversy between the parties. Accordingly, we cannot say that the trial court abused its discretion in refusing to submit the proposed interrogatory. Appellants' second assignment of error is overruled.

Appellants' third and fourth assignments of error read as follows:

"The trial court erred to the prejudice of the Defendant by denying Defendant's limited motion for directed verdict at the close of the Plaintiffs' case.

"The court erred to the prejudice of the Defendant in admitting into evidence, over timely objection, the medical bills of Drs. Blazic, Ortman and Heller at the close of Defendant's case in chief."

Because appellants argue in both assignments of error that the medical bills of Blazic, Ortman and Heller should not have been admitted into evidence, we will consider both assignments of error together.

At trial, Heller and Dr. Lee Ortman testified on behalf of Weidner. Ortman is a family dentist who practices primarily in restorative problems related to TMJ problems. Ortman works on patients after they already have had oral surgery. At the close of Weidner's case, Weidner's counsel moved the medical bills of Blazic, Ortman and Heller into evidence. The trial court admitted them over objections from Blazic's counsel. Thereafter, Blazic's counsel moved for a limited verdict, which the trial court overruled. On appeal, appellants argue that the medical bills should not have been admitted, as there was no proximate cause between the bills from the doctors and the alleged negligence of Blazic.

Civ.R. 50(A), which governs motions for directed verdict, states the following:

"(3) *Grounds.* A motion for a directed verdict shall state the specific grounds therefor.

"(4) *When Granted on the Evidence.* When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that

upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."

At the outset, we note that appellants' limited motion for directed verdict does not state specific grounds as required by Civ.R. 50(A)(3). Appellants made the following motion: "I would like to make a limited motion for directed verdict—again on the same basis. I am not going to belabor the point. I think you know where I am coming from and I think I know what your direction is going to be." While failure to state the grounds for directing the verdict with specificity may lead to the motion's denial, "if the judge can comprehend the movant's position from the motion or arguments related thereto, it can treat the motion as if it stated specific grounds." *White v. Cornell* (Jan. 4, 1991), Lucas App. No. L–89–345, unreported, 1991 WL 399. Because appellants' motion followed discussions between the trial court and counsel regarding the admission of exhibits, including the doctors' medical bills, the court manifestly chose to treat their motion as if it had stated specific grounds.

When considering a motion for a directed verdict, a trial court must construe the evidence most strongly in favor of the party against whom the motion is directed. *Ramage, supra,* 64 Ohio St.3d at 109, 592 N.E.2d at 837. If there is substantial competent evidence which, if believed, would permit reasonable minds to come to different conclusions, the trial court must submit the issue to the jury and thus deny the motion. *TLT–Babcock, Inc. v. Service Bolt & Nut Co.* (1984), 16 Ohio App.3d 142, 143, 16 OBR 149, 150, 474 N.E.2d 1223, 1225. A trial court's denial of a motion for directed verdict cannot be disturbed on appeal absent a showing of an abuse of discretion. *O'Day v. Webb* (1972), 29 Ohio St.2d 215, 58 O.O.2d 424, 280 N.E.2d 896.

Our review of the record indicates that there was substantial competent evidence on which reasonable minds could differ. Heller testified that Blazic deviated from accepted standards of practice in his care and treatment of Weidner when he (1) penetrated the inferior border of Weidner's mandible in placing the implants and (2) used nonresorbable HA to fill the holes resulting from the removal of the implants. Heller further testified that Blazic's penetration of Weidner's mandible and use of nonresorbable HA were the cause of Weidner's pain. With regard to the necessity to perform surgery to remove the HA, Heller testified as follows:

"Q. [By counsel for appellees.] Doctor, do you have an opinion based upon a reasonable degree of dental probability as to whether or not the hydroxylapatite,

or HA, that you removed would have been present to be removed had Dr. Blazic comported himself with the standard of care. Do you have an opinion?

"A. In other words, by saying had he used demineralized, freeze-dried bone?

"Q. No, sir. By saying that had he not penetrated the inferior border—the mandible, which you've testified as a deviation.

"A. Right.

"Q. And had these not had to have been removed because of that, would the HA that you had—which you removed—would it have been present to be removed, to a reasonable degree of dental probability?

"A. No, it would not have been present.

"Q. Doctor, do you have an opinion based upon a reasonable degree of dental probability as to whether or not the necessity to remove the endosteal implants that were placed by Dr. Blazic would have been necessary had he followed the standard of care in this case? Do you have an opinion?

"A. Yes, I don't believe they'd had to be removed."

Heller also testified that as a result of Blazic's deviation from standards of care, Weidner suffered a permanent injury by having less bone present in her mandible than there was before Blazic's placement of the implants. Heller testified that his bills were necessary for the care and treatment of Weidner. On cross-examination, Heller further testified about the surgeries he had performed on Weidner. Contrary to appellants' assertion, Heller did not clearly testify that his surgeries were done merely to treat Weidner's TMJ, and not to correct what Blazic had done, as the following dialogue indicates:

"Q. [By counsel for appellants.] Well, what I'm getting at, though, Doctor, is that the treatment plan that you proposed was not to fix or remedy what Dr. Blazic had done with the implants. They were already out at this juncture, is this not correct?

"A. Yes, they were out. That is correct.

"Q. And the reason she got them in the first place was for treatment of her TMJ?

"A. Yeah, that's correct.

"Q. All right. And, the subperiosteal that you proposed was for treatment of her TMJ?

"A. Well, in essence, it would end up doing that because it would restore the vertical plane of dimension, which Dr. Blazic was going to do. So, your question is correct, but by having any type of implant in there it would stabilize and improve the temporomandibular joint.

"Q. It was not to fix or remedy what Dr. Blazic had done—that proposed treatment?

"A. To place the implant?

"Q. Correct.

"A. Okay. To place the implant was to restore her ability to chew. In so doing, at the same time, I'm going to remove HA that's in the floor of the mouth."

Ortman testified that Weidner had been referred to him by Heller for postsurgery work. Ortman testified that he saw Weidner once before Blazic's surgery and several times afterwards. He testified that following Blazic's surgery, Weidner was sore and in pain and that she was on pain medication. He then testified that on December 27, 1991, he cut some of the gums in Weidner's mouth that had grown over the posts, to relieve the stress and the pressure. Ortman testified that following Blazic's removal of the implants, Weidner continued to be sore and in pain and complained of knots under her chin. Following Heller's surgeries, Ortman continued to see Weidner, beginning September 14, 1992, for postsurgery follow-up regarding Weidner's dentures. Ortman testified that the tissue around the subperiosteal implants was healed normally and that the implants themselves looked good. Ortman finally testified that his treatment of Weidner was dentally necessary and that the bills for his services were reasonable and necessary.

After reviewing the record, we find that there was competent, expert testimony, based on reasonable medical probability, that the medical bills incurred by all three doctors were reasonably and necessarily incurred to treat Weidner following Blazic's first surgery. The trial court therefore did not abuse its discretion when it denied appellants' motion for a directed verdict and appellants' third assignment of error is overruled. Furthermore, we disagree with appellants' contention that once Blazic's implants were removed, Weidner was "essentially in the same position she was in prior to the treatment received from Dr. Blazic." This contention clearly discounts the fact that Weidner was left with five holes in her jaw and a permanently weakened mandible. The record shows that subsequent treatments of Weidner were medically necessary and reasonable. The trial court therefore properly admitted into evidence the medical bills of Blazic, Ortman and Heller and appellants' fourth assignment of error is overruled.

■■■ Appellants' fifth assignment of error reads as follows:

"The trial court erred to the prejudice of the Defendant by admitting into evidence, over objection, the surgical slides of Dr. Heller's operative procedure."

Appellants argue that the slides were inadmissible under Evid.R. 403(A). We disagree.

■ Under Evid.R. 403(A), photographic evidence is admissible unless the photographs' probative value as evidence is substantially outweighed by the danger of unfair prejudice to the defendant. *State v. Jackson* (1991), 57 Ohio St.3d 29, 37–38, 565 N.E.2d 549, 558–560. A trial court's decision to admit photographic evidence must not be disturbed on appeal absent a clear abuse of discretion. *State v. Landrum* (1990), 53 Ohio St.3d 107, 121, 559 N.E.2d 710, 726.

We have reviewed the slides and find that the trial court could have found that their probative value was not substantially outweighed by the danger of unfair prejudice to Blazic. These slides illustrate the general condition of Weidner's mandible after Blazic had removed the implants and filled the resulting holes with HA and clearly depict the piercing of the inferior border of the mandible. They also illustrate the testimony of Heller concerning the two surgeries he performed on Weidner. Furthermore, the record contains no evidence that appellant was unfairly prejudiced by the admission of the slides. Accordingly, we conclude that the trial court did not abuse its discretion in admitting this evidence. Appellants' fifth assignment of error is overruled.

■ Appellants' sixth assignment of error reads as follows:

"The trial court erred to prejudice [*sic*] of the Defendant and abused its discretion by denying Defendant's motion for a new trial and/or remitter."

In this assignment of error, appellants argue that the jury's awards of $200,000 and $25,000 for the respective appellees demonstrate that the jury lost its way and made its awards as a result of passion and prejudice, which, according to Civ.R. 59(A), entitles them to a new trial. Appellants further argue that the awards are clearly excessive in light of the fact that appellees, during the course of the pretrial settlement conference, indicated that they would accept $45,000 to settle the claim.

■ The assessment of damages is a matter within the province of the jury. *Litchfield v. Morris* (1985), 25 Ohio App.3d 42, 25 OBR 115, 495 N.E.2d 462. As a result, in order to be entitled to a new trial based upon an inadequate award of damages, the new trial movant must demonstrate that the verdict was the result of jury passion and prejudice and that it was so disproportionate in amount as to shock reasonable sensibilities. *Peck v. Ryan* (June 30, 1988), Butler App. No. CA87–09–120, unreported, 1988 WL 71614. A trial court's denial of a motion for a new trial will not be reversed on appeal absent a showing of an abuse of discretion. *Verbon v. Pennese* (1982), 7 Ohio App.3d 182, 7 OBR 229, 454 N.E.2d 976.

In the case at bar, it cannot be said that the award was so excessive as to appear to be the result of passion or prejudice. First, the mere fact that the jury awarded $225,000 to appellees when they would have settled for $45,000 (a figure

which was not known to the jury) is not enough to establish passion or prejudice. Second, Weidner testified as to the pain and suffering she experienced as a result of Blazic's surgeries. Weidner further testified as to the additional surgeries performed on her to remedy her problems. Finally, the jury also heard testimony that, due to the holes' being drilled and subsequently filled, Weidner's jaw was permanently weakened.

Based on the record before us and the fact that the jury was free to accept or reject any or all of Weidner's damage evidence, *Carter v. Simpson* (1984), 16 Ohio App.3d 420, 423, 16 OBR 490, 493, 476 N.E.2d 705, 708, we are not persuaded the jury's awards were the result of passion or prejudice. Similarly, we are not persuaded that it was an abuse of discretion for the trial court to deny appellants' motion for new trial. Appellants' sixth assignment of error is overruled.

■ Appellees' cross-appeal raises one assignment of error, asserting that the trial court erred in not awarding them prejudgment interest pursuant to R.C. 1343.03(C) when appellants failed to make a good faith effort to settle the case. In the case at bar, appellants made no offer until the trial court ordered a settlement conference the Monday before trial was to commence. As a result of the court-ordered settlement conference, appellees reduced their demand to $45,000, while a settlement offer of $15,000 was tendered by appellants to the court although never formally offered to appellees. No settlement was reached and the case went to trial.

The Ohio Supreme Court has held that:

"A party has not 'failed to make a good faith effort to settle' under R.C. 1343.03(C) if he has (1) fully cooperated in discovery proceedings, (2) rationally evaluated his risks and potential liability, (3) not attempted to unnecessarily delay any of the proceedings, and (4) made a good faith monetary settlement offer or responded in good faith to an offer from the other party. If a party has a good faith, objectively reasonable belief that he has no liability, he need not make a monetary settlement offer." *Kalain v. Smith* (1986), 25 Ohio St.3d 157, 159, 25 OBR 201, 203, 495 N.E.2d 572, 574.

■ The decision as to whether a party's settlement efforts indicate good faith is within the sound discretion of the trial court. *Id.* A reviewing court will not overturn a trial court's determination on the issue unless it connotes an abuse of discretion. *Id.*

Appellees do not contend that appellants failed to cooperate with discovery or unnecessarily delayed the proceedings. Rather, they contend that appellants could not have had an objectively reasonable belief that they were not liable and that their failure to settle was not done in good faith. Appellees base their claim on the fact that appellants knew that appellees' expert would testify that

penetrating the inferior border of Weidner's mandible was a deviation from the standard of care. Appellees also point out that while appellants' expert testified that penetrating a mandible's inferior border by up to one and one-half millimeters was not a deviation, he could not state with the same certainty that penetrating by three millimeters was also not a deviation. Appellants' expert testified that whether such penetration was a deviation depended on many factors.

In its March 17, 1994 entry denying appellees' motion for prejudgment interest, the trial court found that appellants had an expert at the pretrial settlement conference who was willing to testify that appellants had committed no deviations from the accepted standard of care. The court then held that "[g]iven the expert testimony on behalf of [appellants], this Court cannot find that [appellants] acted with a lack of good faith. While [appellants] did not necessarily properly evaluate their exposure, this Court cannot say that the lack of making an offer in this case is such that prejudgment interest should be awarded."

A trial court's decision to deny interest must be so "violative of logic that it evidences a perversity of will, defiance of judgment, and the exercise of passion or bias in order to amount to an abuse of discretion." *Cox v. Oliver Mach. Co.* (1987), 41 Ohio App.3d 28, 38, 534 N.E.2d 855, 865. We find no such abuse here and refuse to overrule the trial court's decision denying prejudgment interest. The sole assignment of error in the cross-appeal is therefore overruled.

*Judgment affirmed.*

KOEHLER, J., concurs.

WALSH, J., concurs in part and dissents in part.

WALSH, Judge, concurring in part and dissenting in part.

I must respectfully dissent from the majority's decision in connection with appellants' second assignment of error because I believe appellants' proposed interrogatory was proper and should have been submitted to the jury.

Initially, I disagree with the majority's opinion that the proposed interrogatory is too vague and confusing. As the majority points out, the jury in this case was presented with two distinct issues of deviation from the standard of care: (1) whether it was a deviation for Blazic to pierce the inferior border of Weidner's mandible, and (2) whether it was a deviation for Blazic to fill the holes left by the implants with HA. Appellants' proposed interrogatory read: "Do you find from a preponderance of the evidence that Dr. Blazic, in placing implants beneath the inferior border of the Plaintiff's mandible, deviated from an accepted standard of

care and treatment?" As this interrogatory clearly and directly addressed the first issue to be determined by the jury, it was not vague or confusing.

Further, I disagree with the majority's finding that the proposed interrogatory did not address determinative issues in the case. The majority reasons that, because there were two distinct issues of deviation presented in this case and because appellants' proposed interrogatory addressed only one issue, it would not have definitely settled the controversy between the parties; therefore, the majority concludes that it did not address determinative issues. The majority apparently reads Civ.R. 49(B) to require interrogatories to test all determinative issues. Such a reading is erroneous.

Civ.R. 49(B) provides that "interrogatories may be directed to *one or more* determinative issues * * *." (Emphasis added.) Appellants' proposed interrogatory was indeed directed to one such issue, namely, whether Blazic had deviated from an accepted standard of care in piercing the inferior border of Weidner's mandible. As such, the interrogatory was proper and the trial court had a duty under Civ.R. 49(B) to submit it. See *Freeman, supra,* 69 Ohio St.3d at 615, 635 N.E.2d at 314 (when plaintiff's allegations include more than one act of negligence, it is proper to ask the jury to state of what the negligence consisted). Thus, the trial court's failure to submit the instruction constituted an abuse of discretion.