On March 19, 1996, appellant and defendant-appellee, Herbert Tibbs, were involved in an automobile collision at the intersection of Verity Parkway and Yankee Road in Middletown, Ohio. On July 3, 1997, appellants filed a claim against appellee for damages. Appellant claimed that as a direct and proximate result of appellee's negligence he sustained bodily injury which necessitated ongoing medical treatment, and he incurred, and would continue to incur, medical expenses. Appellants also claimed that as a direct and proximate result of the accident, Phyllis Botts suffered a loss of her husband's consortium.
A jury trial commenced on May 6, 1998. Although the record before this court does not contain a stipulation as to appellee's negligence, we note that during the trial appellee conceded to being at fault in the collision.[2] Accordingly, both proximate cause and damages were issues left for the jury's consideration.
Appellant, a Baptist minister, testified at trial that in November 1995 he suffered a heart attack. As a result of the heart attack, appellant was involved in physical therapy. On March 19, 1996, appellant was returning home after a physical therapy session when appellee's vehicle collided with appellant's vehicle. Appellant testified that upon impact his vehicle's air bags deployed and he lost consciousness for a moment. While appellant declined to be transported to the hospital by ambulance at the scene of the acci dent, he did seek medical attention at Middletown Regional Hospital later that day.
Two days after the accident, on March 21, 1996, appellant followed-up with his family doctor, Dr. Savage. Dr. Savage advised appellant to treat his injuries with ibuprofen. On March 22, 1996, appellant sought medical treatment from a chiropractor, Dr. Adam Reed. Dr. Reed treated appellant for two years.[3]
At trial, appellant testified that he currently experienced ongoing pain in his neck, and that his range of movement was limited.
On cross-examination, appellant admitted that prior to the accident he suffered from migraine headaches, and that he previously "had problems with dizziness and headaches * * *." Appellant also testified that as a consequence of the accident and the subsequent pain he had become "snappy" and short-tempered with his wife, and that such behavior was adversely affecting his marriage. However, appellant denied ever seeking marital counselling or therapy. On cross-examination, appellant also admitted that, since the accident, he has not engaged in any exercise or physical therapy. Finally, appellant testified that, as a result of the accident, he incurred medical expenses totaling approximately $6,000, of which approximately $4,300 were chiropractic expenses.
At trial, Dr. Reed testified that he treated appellant following the accident for a multitude of symptoms, including headaches and dizziness. Suspicious that appellant's dizzy spells were being caused by a condition known as "coclearhydrops" [sic], Dr. Reed consulted with an ear, nose and throat specialist, Dr. Simpson. At Dr. Reed's request, Dr. Simpson examined appellant and confirmed Dr. Reed's suspicion.
Also, during appellant's course of treatment, Dr. Reed diagnosed appellant with "post-concussive syndrome." He further testified that by the time of trial, appellant had achieved maximum medical improvement ("MMI"). However, Dr. Reed ultimately opined that as a result of the accident, appellant would continue to suffer some pain and to experience a limited range of movement in his neck. Dr. Reed also opined that appellant's injury was permanent.
Phyllis Botts testified that she and appellant had been married for forty years. Following her husband's heart attack in 1995, but before the accident, Phyllis Botts testified that appellant was recovering nicely, and that she and her husband were looking forward to enjoying their retirement years together. Following the accident however, Phyllis Botts testified that her husband was in constant pain and often unable to sleep through the night. Phyllis Botts testified that appellant frequently became short-tempered and irritable with her.
Near the end of the trial, appellant presented testimony from one of his parishioners and his son, Steve Botts. Both individuals testified that appellant often experienced neck pain, and that he had begun to delegate many of his preaching duties to others.[4] Steve Botts testified that since the accident, appellant had become more short-tempered and "edgy."
A videotaped deposition of Thomas Bender, M.D., was presented as expert medical testimony by appellee at trial. At the request of appellee's insurance company, on March 31, 1998, Dr. Bender had performed an independent medical examination ("IME") of appellant. As part of the IME, Dr. Bender took a complete medical history from appellant and performed a "hands-on" physical examination. During the IME, appellant admitted to Dr. Bender that the majority of his symptoms resulting from the accident had resolved, with the exception of his neck pain.
Dr. Bender testified that he found no evidence that as a result of the accident appellant had suffered any hard tissue injury or fracture. Rather, Dr. Bender characterized appellant's injury as a "soft tissue injury consistent with a sprain or strain to the cervical spine." Dr. Bender further testified that for a soft tissue injury, the standard medical treatment should take "approximately three to four months," but that to continue soft tissue treatment "for a period of nearly one year is outside what is currently followed by conventional allopathic medicine." Dr. Bender contended that the initial treatment of a soft tissue injury should be followed with physical therapy in order to recondition and strengthen the injured tissue and to avoid deconditioning. Finally, Dr. Bender opined, to a reasonable degree of medical certainty, that appellant's accident related injuries had (1) "reached a level of improvement that should not cause further deterioration in the future," (2) should not require ongoing medical treatment, and (3) should not require surgical intervention.
The transcript of the proceedings does not include instructions to the jury. There is no indication in the record that either party objected to the charge or the verdict forms submitted to the jury. On May 7, 1998, the jury rendered a verdict of $1,872.66 in favor of appellant. However the jury returned a verdict for Phyllis Botts in the amount of $0. There was no request to poll the jury pursuant to Civ.R. 48. Furthermore, the jury verdicts, which were finalized by judgment entry on June 9, 1998, were not tested by interrogatories pursuant to Civ.R. 49(B). Appellants did not file a motion for a new trial, a motion for judgment not withstanding the verdict, or a motion for additur. Rather, appellants filed this appeal and raise the following assignments of error for our review:
Assignment of Error No. 1:
 THE TRIAL COURT ERRED BY ENTERING JUDGMENT ON THE JURY'S VERDICT AWARDING AN AMOUNT LESS THAN HIS MEDICAL EXPENSES WHERE THE DEFENDANT'S EXPERT WITNESS TESTIFIED THAT PLAINTIFF'S CHIR OPRACTIC TREATMENT WAS REASONABLE FOR AT LEAST THE FIRST THREE TO FOUR MONTHS AND THE REMAINDER OF THE PLAINTIFF'S DAMAGES WERE UNCONTROVERTED.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED BY ENTERING JUDGMENT ON THE JURY'S VERDICT AWARDING ZERO DOLLARS TO PHYLLIS R. BOTTS, AS IT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE TO FIND NO LOSS OF CONSORTIUM DAMAGES WHILE ALSO FINDING THE SPOUSE WAS INJURED.
Essentially, under both assignments of error, appellants argue that it was reversible error for the trial court to enter judgment on damage awards which were against the manifest weight of the evidence. Specifically, appellants argue that the damage awards were against the manifest weight of the evidence because, (1) for appellant, the jury awarded less than his undisputed medical expenses, and (2) for Phyllis Botts' loss of consortium claim, in spite of a finding in her favor, the jury awarded her no damages at all.
We begin by examining the appropriate standard of review. In deciding whether an award of damages is sustained by the weight of the evidence, a reviewing court must determine if the award resulted from the jury's failure to consider an element of damages that was established by uncontroverted evidence. Dillon v. Bundy
(1992), 72 Ohio App.3d 767, 773. If a judgment is supported by some competent, credible evidence, it will not be reversed by a reviewing court as being against the manifest weight of the evidence. C. E. Morris Co. v. Foley Construction Co. (1978), 54 Ohio St.2d 279.
Generally, the assessment of damages lies within the province of the jury. Weidner v. Blazic (1994), 98 Ohio App.3d 321, 334. A jury is free to accept or reject any or all of the testimony of any witness, including testimony of an expert witness. Id. at 335. Moreover, even when the evidence is undisputed, the jury possesses the inherent right to reject the evidence presented.Krauss v. Kilgore (July 27, 1998), Butler App. No. CA97-05-099, unreported, at 15, citing Lantham v. Wilson (Aug. 12, 1991), Madison App. No. CA90-11-024, unreported. "A jury is free to reject any evidence and is not required to accept evidence simply because it is uncontroverted, unimpeached or unchallenged." Id.
at 6, citing Ace Steel Baling Inc. v. Porterfield (1969), 19 Ohio St.2d 137,138. Damage awards in personal injury actions are particularly within the province of the jury and neither a reviewing court nor a trial court can substitute its judgment for that of the jury. Litchfield v. Morris (1985), 25 Ohio App.3d 42,44.
In the instant case, given that appellant presented evidence of medical expenses totaling almost $6,000, and the jury awarded appellant less than $2,000. In a personal injury action, because so much of the evidence presented by the injured party is of a subjective nature, the credibility of the witness becomes key. Given the case law discussed above, it certainly remains within the jury's prerogative to disbelieve, or reject, some or even all of the evidence presented by appellant. Furthermore, in a personal injury action, it is the plaintiff who bears the burden of proving to the jury, by a preponderance of the evidence, that the defendant's negligence was a direct or proximate cause of the plaintiff's injuries. See Gedra v. Dallmer Co. (1950), 153 Ohio St. 258.
The jury's award of damages to appellant in the instant case may reflect appellant's failure to establish that the accident of March 19, 1996, was the direct or proximate cause of the injuries he complained of at trial. Specifically, we note that appellee presented evidence that appellant had difficulties with headaches and dizziness prior to the accident of March 19, 1996. Moreover, the jury was presented with conflicting evidence as to whether or not appellant had been "over-treated" by his chiropractor, Dr. Reed. There was also evidence presented that given appellant's lack of exercise he had neglected to re-condition or strengthen the injured tissues. Given these facts, this court declines to substitute its judgment for that of the jury with respect to appellant's damage award.
With respect to Phyllis Botts' loss of consortium claim, it is clear that her damages were not proven to the satisfaction of the jury. Appellants did not present the jury any evidence of monetary loss Phyllis Botts suffered as a result of her husband's accident, as it was established at trial that appellant retired from his ministry as a result of his heart attack in 1995, not as a result of the injuries he suffered in the accident. Moreover, we find that it remained within the jury's prerogative to disbelieve or reject testimony about how the accident and appellant's subsequent injuries affected appellants' marriage.
In addition to the foregoing, we re-emphasize that the record before this court does not establish that appellants ever questioned these verdicts upon their return. If appellants were concerned about these verdicts, then they should have asked the trial court to poll the jury. "Polling the jury is the generally recognized means of determining whether there has been proper agreement of the jurors to the verdict." Sarbiewski v. Ball (Sept. 18, 1992), Ashtabula App. No. 91-A-1669, unreported, at 11. Similarly, the jury verdict was never tested by interrogatories. Appellants could have requested such interrogatories pursuant to Civ.R. 49(B). "Such an omission fails to inform the reviewing court of that evidence which the jury ultimately accepted or rejected in reaching its verdict." Krauss v. Kilgore (July 27, 1998), Butler App. No. CA97-05-099, unreported, at 15-16.
Having reviewed the record, we decline to substitute our judgment for that of the jury with respect to either of the verdicts. Absent polling and/or interrogatories, we cannot say that the jury verdicts were against the manifest weight of the evidence. Further, we note that the record contains competent and credible evidence to support the jury's verdicts. Both of appellants' assignments of error are therefore overruled, and the judgment of the trial court is affirmed.
WALSH and VALEN, JJ., concur.
[1] When referred to together, Mr. and Mrs Botts will be referred to as appellants. However, when referred to separately, Mr. Botts will be referred to as appellant and Mrs. Botts will be referred to as Phyllis Botts.
[2] Specifically, appellee was asked the following on direct examination by his counsel:
 Q. And you have no problem admitting this accident was your fault. Is that true?
A. True.
[3] Evidence presented at trial established that Dr. Reed treated appellant from March 22, 1996 until March 23, 1998.
[4] The record before this court clearly indicates that sometime between his heart attack in November of 1995 and the accident in March of 1996 appellant had filed an application for retirement.