DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from the judgment of the Athens County Court of Common Pleas in which Defendant-Appellant Todd Hansen was convicted of felonious assault, a second-degree felony in violation of R.C. 2903.11(A)(2). The trial court sentenced Hansen to a prison term of four years, imposed post-release control, and ordered Hansen to pay the costs of the action.
 {¶ 2} Hansen challenges the trial court's judgment on three grounds: (1) that the self-defense instruction was erroneous; (2) that he was deprived of the effective assistance of counsel; and (3) that the verdict was against the manifest weight of the evidence.
 {¶ 3} We find appellant's arguments to be without merit and affirm the well-reasoned judgment of the trial court.
 I. The Proceedings Below {¶ 4} In June 2000, Defendant-Appellant Todd Hansen was in Athens, Ohio, on business. Hansen worked for a Texas company that specialized in installing artificial track and turf. He was in Athens, along with three other coworkers, installing a running track.
 {¶ 5} One evening, Hansen and his three coworkers went to a local bar. Evidently, the Hansen contingent got into an argument with a local group of men, which included John Brokaw and Richard Randall, over the merits of their respective states' football teams. Eventually, a physical altercation occurred between the men and they were ejected from the bar.
 {¶ 6} Once outside the bar, the altercation continued and eventually swelled to a group of ten to fifteen men fighting — including the four-man Hansen contingent, Brokaw, and Randall.
 {¶ 7} At this time, Hansen decided to abandon the fight and walk away. He continued down the street about a hundred feet before he changed his mind and decided to return to the fight — allegedly because he felt he was deserting his three coworkers and because he feared that his job might be adversely affected by doing so.
 {¶ 8} Once he had returned to the scene of the fighting, Hansen wielded a lock-blade knife that he used to cut materials while working. He first threatened Brokaw with the knife. He then began chasing Randall through the street while swinging the knife at him. Hansen ended up cutting Randall, at least once, on his back.
 {¶ 9} At this time, the Athens Police Department arrived. Officer Gary Braglin, after seeing Hansen wielding a knife and chasing Randall through the street, yelled for Hansen to stop. After Hansen saw Braglin, he switched the knife from one hand to the other and then threw it.
 {¶ 10} Hansen was then arrested and taken to the police station where he was interviewed by Detective Ronald Brooks. Hansen, after waiving his Miranda rights, told Brooks that he had no knowledge of any knife, stabbing, or cutting. Brooks noted that Hansen was very agitated, but sober.
 {¶ 11} In August 2000, the Athens County Grand Jury indicted Hansen on one count of felonious assault, a second-degree felony in violation of R.C. 2903.11(A)(2). Hansen pled not guilty and the case proceeded to a jury trial.
 {¶ 12} At the trial, the state presented multiple witnesses who had observed Hansen's altercation with Randall: Dwayne Wigfield, the bartender, who testified that he witnessed Hansen make a "throwing action" aimed at the back of Randall; Martin Blankenship, a bar patron who was not involved in the fracas, who testified that he saw Hansen waving a knife and chasing Randall, and that he saw Hansen cut Randall at least once; Braglin, who testified that, when he arrived at the scene, he witnessed Hansen wielding a knife and chasing Randall through the street, and, after Braglin yelled for Hansen to stop, witnessed Hansen throw the knife; Randall, who testified that Hansen indeed chased him and then cut him with the knife; and Brokaw, who testified that he witnessed Hansen chase and then cut Randall as well.
 {¶ 13} In response, Hansen presented solely his own testimony: he testified that he only wielded the knife in self-defense, that he never chased Randall, and that he could not recall whether he had stabbed or cut Randall.
 {¶ 14} After a brief deliberation, the jury found Hansen to be guilty of the indicted offense.
 {¶ 15} In December 2000, the trial court held the sentencing phase of the trial. It sentenced Hansen to a prison term of four years, imposed post-release control, and ordered Hansen to pay the costs of the action.
 II. The Appeal {¶ 16} Hansen timely filed an appeal with this Court, assigning the following errors for our review.
 {¶ 17} First Assignment of Error: "The trial court committed prejudicial error by improperly instructing the jurors on the use of deadly force as part of its self defense instruction."
 {¶ 18} Second Assignment of Error: "Defendant-appellant was denied the effective assistance of counsel."
 {¶ 19} Third Assignment of Error: "The verdict was against the manifest weight of the evidence."
 A. Self-Defense Instruction
 {¶ 20} In his First Assignment of Error, Hansen argues that the trial court committed plain error "by improperly instructing the jurors on the use of deadly force as part of its self[-]defense instruction." We disagree.
 {¶ 21} Hansen asserts that the trial court erred in giving the jury an instruction on self-defense involving the use of deadly force. Specifically, Hansen argues that the trial court should have instructed the jury on the self-defense instruction relevant to assaults with less-than deadly force, as found in 4 Ohio Jury Instructions (2000), Section 411.33(2), as opposed to the instruction the court used, which is the self-defense instruction applicable to assaults with deadly force, as set forth in 4 Ohio Jury Instructions (2000), Section 411.31(2).
 {¶ 22} The key difference between the two instructions is that the deadly-force instruction contains a more rigid standard than the non-deadly-force instruction.
 {¶ 23} Specifically, the deadly-force instruction: (1) requires the defendant to prove, by a preponderance of the evidence, that he perceived himself to be in grave danger; and (2) in certain circumstances, the defendant might have a duty to retreat. See, e.g., State v. Robbins (1979), 58 Ohio St.2d 74, 388 N.E.2d 755.
 {¶ 24} Conversely, the non-deadly-force instruction only requires the defendant to show that he reasonably believed that such conduct was necessary to defend himself. See, e.g., Columbus v. Dawson (1986),33 Ohio App.3d 141, 514 N.E.2d 908. Further, the non-deadly-force instruction does not carry, in any circumstances, the duty to retreat.
 {¶ 25} The crux of Hansen's argument, in this regard, is his characterization of the term "deadly force." He maintains that slashing Randall with a lock-blade knife was not deadly force because he was not charged with "homicide or attempted homicide," and because "[h]e was not alleged to have caused serious physical harm" — Randall only suffered minor cuts from the attack.
 {¶ 26} The Eleventh District Court of Appeals was presented with this precise argument in State v. Wagner (July 14, 2000), Lake App. No. 99-L-043, unreported. In Wagner, the appellant, like Hansen in this case, had been charged and convicted of felonious assault. And, also like Hansen, the appellant in Wagner argued that the use of his weapon — a broken wineglass — was not deadly force because it did not seriously injure the victim.
 {¶ 27} The Wagner Court categorically rejected this argument, providing the following explanation: "Appellant was charged with felonious assault, in part because he allegedly used a broken wineglass as a deadly weapon in attacking [the victim]. These facts supported the instruction given by the trial court. `Deadly force' is defined as a force that `carries a substantial risk that it will proximately' cause death. R.C.2901.01(2). Clearly, the jagged edge of a broken wineglass, when used as a weapon toward someone's head, carries a substantial risk of death. Hence, the [deadly-force,] self-defense instruction was warranted in this case. [The] [a]ppellant's * * * assignment of error is without merit."Id.
 {¶ 28} Likewise, the Eighth District Court of Appeals rejected a similar argument in State v. Chlebowski (May 28, 1992) Cuyahoga App. No. 60808, unreported: "Appellant * * * argues the trial court committed prejudicial error in its charge to the jury on self-defense. * * * [The] appellant states the gist of the trial court's instructions required him to show that he was in imminent danger of death or of great bodily harm before he could exercise self-defense. [The] [a]ppellant contends the trial court's charge to the jury should have been tailored to the facts of the instant case, which involve a charge of merely causing physical harm rather than serious physical harm. However, appellant was charged with causing physical harm by means of a deadly weapon or dangerous ordnance. Thus, the trial court was correct in its charge, which was tailored to the fact that [the] appellant allegedly used a deadly weapon in inflicting physical harm." Id.; see, generally, Akron v. Dokes
(1986), 31 Ohio App.3d 24, 507 N.E.2d 1158, syllabus ("A real or perceived threat of death or great bodily harm is required in order for the use of deadly force to be justified as self-defense * * *.").
 {¶ 29} We fall in line with the Wagner and Chlebowski holdings. We find that slashing another person with a lock-blade knife carries a substantial risk of death. See Wagner. And, likewise, we find that a deadly-force, self-defense instruction is appropriate when physical harm was inflicted by means of a deadly weapon or dangerous ordnance. SeeChlebowski.
 {¶ 30} Thus, we find that the deadly-force, self-defense instruction was warranted in this case. Consequently, we find that the trial court did not commit plain error by providing this instruction to the jury.
 {¶ 31} Hansen's First Assignment of Error is OVERRULED.
B. Ineffective Assistance of Counsel
 {¶ 32} In his Second Assignment of Error, Hansen argues that he was provided the ineffective assistance of counsel. We disagree.
 {¶ 33} In Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052, the United States Supreme Court set forth a two-pronged analysis, both of which must be demonstrated, for a party to be successful on a claim of ineffective assistance of counsel.
 {¶ 34} The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation. See Stricklandv. Washington, 466 U.S. at 687, 104 S.Ct. at 2064; accord State v.Ballew (1996), 76 Ohio St.3d 244, 255, 667 N.E.2d 369, 380 (adopting theStrickland analysis). In Ohio, a properly licensed attorney is presumed competent and the burden is on appellant to show counsel's ineffectiveness. See State v. Lytle (1976), 48 Ohio St.2d 391, 397,358 N.E.2d 623, 627; accord State v. Hamblin (1988), 37 Ohio St.3d 153,524 N.E.2d 476.
 {¶ 35} The second prong is whether counsel's alleged ineffectiveness prejudiced appellant. See Strickland v. Washington,466 U.S. at 687, 104 S.Ct. at 2064; accord Lockhart v. Fretwell (1993),506 U.S. 364, 113 S.Ct. 838; State v. Bradley (1989), 42 Ohio St.3d 136,538 N.E.2d 373. The establishment of prejudice requires proof "that there exists a reasonable probability that were it not for counsel's errors, the result * * * would have been different." State v. Bradley,42 Ohio St.3d 136, 538 N.E.2d 373, paragraph three of the syllabus.
 {¶ 36} Here, Hansen argues that his trial counsel was ineffective on three grounds: (1) because she "failed to subpoena crucial witnesses for the defense, due to [her] ignorance of her statutory power to subpoena out-of-state witnesses * * *"; (2) because she "fail[ed] to object to an improper jury instruction that effectively eliminate[d] [Hansen's] self-defense claim"; and (3) because she "failed to object to the prosecutor's inevitable commentary during closing that, if * * * Hansen really acted in self-defense, than [sic] he was obliged to talk to the police about his defense after his arrest." We will address these arguments in turn.
 1. Failure to Subpoena Witnesses {¶ 37} Repeatedly, the Supreme Court of Ohio has held that "counsel's decision whether to call a witness falls within the rubric of trial strategy and will not be second-guessed by a reviewing court."State v. Treesh (2001), 90 Ohio St.3d 460, 489, 739 N.E.2d 749, 778; seeState v. Jackson (2001), 92 Ohio St.3d 436, 447, 751 N.E.2d 946, 961
(finding that "counsel's decision in not calling * * * a defense witness could well have been a tactical decision and therefore cannot be considered as rising to the level of ineffective assistance of counsel"). However, if it is demonstrated that the failure to call a witness prejudiced the defense of the defendant, the defendant's counsel may be found to be ineffective. See State v. Treesh,90 Ohio St.3d at 489, 739 N.E.2d at 778.
 {¶ 38} Hansen argues that, because the trial counsel stated in her opening argument that Hansen's coworkers could not be present for the trial, that the sole reason that she did not call them must have been because she was "ignorant of her statutory power to subpoena the out-of-state witnesses to trial * * *."
 {¶ 39} Hansen's argument fails for two reasons. First, it is pure conjecture based on allegations unsupported by the record. "[A] reviewing court cannot add matter to the record before it that was not a part of the trial court's proceedings, and then decide the appeal on the basis of the new matter." State v. Hooks (2001), 92 Ohio St.3d 83, 748 N.E.2d 528; see, e.g., State v. Burke (Nov. 15, 2001), Franklin App. No. 90AP-1344, unreported; State v. Gaines (Apr. 17, 2000), Butler App. No. CA99-04-082, unreported.
 {¶ 40} Second, Hansen has failed to demonstrate how the testimony of these witnesses would have aided him in his defense. Thus, Hansen has not proven that, but for his trial counsel's performance in this regard, the result of the case would have been different. See State v. Bradley,42 Ohio St.3d 136, 538 N.E.2d 373, paragraph three of the syllabus;Middletown v. Allen (1989) 63 Ohio App.3d 443, 579 N.E.2d 254.
 {¶ 41} Thus, we follow the lead of the Supreme Court of Ohio and decline Hansen's invitation to "second-guess" his trial counsel's decision to call, or not to call, certain witnesses. See State v.Treesh, 90 Ohio St.3d at 489, 739 N.E.2d at 778; State v. Jackson,92 Ohio St.3d at 447, 751 N.E.2d at 961.
 2. Failure to Object to Jury Instruction {¶ 42} In light of our discussion of the First Assignment of Error — in which we found that the deadly-force, self-defense instruction was proper — we see no need to address this argument: it could not have been ineffective assistance of counsel to fail to object to the use of this jury instruction because the jury instruction was proper. SeeJames A. Keller, Inc. v. Flaherty (1991), 74 Ohio App.3d 788,600 N.E.2d 736, citing South Pacific Terminal Co. v. Interstate CommerceComm. (1910), 219 U.S. 498, 514, 31 S.Ct. 279, 283 (explaining the mootness doctrine).
 3. Failure to Object to Statement in Closing Argument {¶ 43} Lastly, Hansen argues that his trial counsel was ineffective because she "failed to object to the prosecutor's inevitable commentary during closing that, if * * * Hansen really acted in self-defense, than [sic] he was obliged to talk to the police about his defense after his arrest."
 {¶ 44} We see no need to address this argument in any detail as Hansen readily concedes in his brief to this Court that this supposed error did not prejudice his case: "failing to object to the[se] * * * violations did not, by itself [sic], prejudice the defense * * *."
 {¶ 45} As we explained earlier, to be successful on a claim of ineffective assistance of counsel, the appellant must show that, but for his trial counsel's performance, the result of the case would have been different. See State v. Bradley, 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph three of the syllabus; Middletown v. Allen (1989)63 Ohio App.3d 443, 579 N.E.2d 254. As Hansen concedes that there was no prejudice to his case in this regard, then he has necessarily failed to present a successful claim of ineffective assistance of counsel on this ground.
 {¶ 46} Hansen's Second Assignment of Error is OVERRULED.
C. Manifest-Weight Challenge to the Verdict
 {¶ 47} In his Third Assignment of Error, Hansen argues that the verdict was against the manifest weight of the evidence. Again, we disagree.
 {¶ 48} For an appellate court to reverse the judgment of a trial court on the basis that the verdict is against the manifest weight of the evidence, it must "sit as a `thirteenth juror' and disagree with the [fact-finder's] resolution of the conflicting testimony." (Emphasis added.) Tibbs v. Florida (1982), 457 U.S. 31, 42, 102 S.Ct. 2211, 2223.
 {¶ 49} The First District Court of Appeals, in State v. Martin
(1983), 20 Ohio App.3d 172, 485 N.E.2d 717, provided a succinct statement of the appropriate analysis to be utilized in such cases. "The [appellate] court, reviewing the entire record, [should] weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin, 20 Ohio App.3d at 175,485 N.E.2d at 717, 720-21; see, generally, Whiteside, Ohio Appellate Practice (2001 Ed.) 287-91 (explaining that "manifest weight of the evidence involves * * * whether reasonable minds could reasonably weigh the evidence to reach the factual finding. * * * [O]ne rationale for this is that the finder of fact has had an opportunity to observe the demeanor of the witnesses, a factor not normally preserved in the record of appeal."); accord Weidner v. Blazie (1994), 98 Ohio App.3d 321,648 N.E.2d 565.
 {¶ 50} As we noted in our presentation of the facts in this case, at the trial, the state presented multiple witnesses who had observed Hansen's altercation with Randall: Wigfield, who testified that he witnessed Hansen make a "throwing action" aimed at the back of Randall; Blankenship, who testified that he saw Hansen waving a knife and chasing Randall, and that he also saw Hansen cut Randall at least once; Braglin, who testified that, when he arrived at the scene, he witnessed Hansen wielding a knife and chasing Randall through the street, and, after Braglin yelled for Hansen to stop, witnessed Hansen throw the knife; Randall, who testified that Hansen indeed chased him and then cut him with the knife; and Brokaw, who also testified that he witnessed Hansen chase and then cut Randall.
 {¶ 51} In response, Hansen presented solely his own testimony: he testified that he only wielded the knife in self-defense, that he never chased Randall, and that he could not recall whether he had stabbed or cut Randall.
 {¶ 52} Evidently, the jury found Hansen's testimony to be less credible than that of the state's witnesses.
 {¶ 53} Now, on appeal, Hansen concludes that the state's evidence should be disregarded. Despite the fact that the very nature of a manifest-weight-of-the-evidence challenge concerns the weighing of evidence, Hansen supports his conclusion with an argument that is not based on evidence, but purely on theoretical argument: "When [Hansen] returned, there is no indication that [he] wanted blood. He waived [sic] off two individuals and then finally cut * * * Randall, who concededly was fighting on a belly full of beer. * * *. * * * Hansen claimed that he had not intended * * * Randall harm. His only purpose was to stop the fight; given his impaired hand and his perception that his boys were outnumbered, he resorted to waving his knife at the combatants."
 {¶ 54} We find this argument to be without merit. And, after reviewing the evidence presented in the case sub judice, we find that the trial court properly convicted Hansen of felonious assault. We find that a reasonable fact-finder presented with the evidence in this record, aided by the additional opportunity to observe the demeanor of the witnesses, could properly find that Hansen was guilty of this crime.
 {¶ 55} Hansen's Third Assignment of Error is OVERRULED.
 III. Conclusion {¶ 56} For the foregoing reasons, we OVERRULE Hansen's assignments of error and AFFIRM the judgment of the Athens County Court of Common Pleas.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that appellee recover of appellant costs herein taxed.
This Court finds that there were reasonable grounds for this appeal.
It is further ordered that a special mandate issue out of this Court directing the ATHENS COUNTY COURT OF COMMON PLEAS to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEENPREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, IT IS TEMPORARILYCONTINUED FOR A PERIOD NOT TO EXCEED SIXTY DAYS UPON THE BAIL PREVIOUSLYPOSTED. The purpose of the continued stay is to allow appellant to file with the Supreme Court of Ohio an application for stay during the pendency of proceedings in that court.
If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty-day period, or the failure of appellant to file a notice of appeal with the Supreme Court of Ohio within the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to the expiration of the sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Harsha, J.: Concurs in Judgment and Opinion as to Assignments of Error I III; Concurs in Judgment Only as to Assignment of Error II.
Kline, J.: Concurs in Judgment Only.