**BROOKS, Appellee,**

v.

**WILSON, Appellant.**

[Cite as *Brooks v. Wilson* (1994), 98 Ohio App.3d 301.]

Court of Appeals of Ohio,
Summit County.

No. 16576.

Decided Oct. 26, 1994.

*Maria Sperando, Dea Character Floyd* and *Evette DeMore–Ford,* for appellee.

*Michael Ockerman* and *Gary Banas,* for appellant.

BAIRD, Judge.

This cause comes before the court upon the appeal of Dan E. Wilson from judgments of the Summit County Court of Common Pleas denying his motions for new trial.   We affirm.

The appellee, Faith S. Brooks,[1] suffered injuries as the result of unsuccessful dental work performed by Dr. Wilson. In order to recover damages for this injury, she sued him for dental malpractice, claiming that his negligent dental care was the proximate cause of her temporomandibular joint ("TMJ") dysfunction, or myofacial pain disorder ("MPD"), and the attendant pain, suffering, and treatment expenses. The case was tried to a jury. Each side offered expert testimony as to the standard of dental care and the severity of the harm. Dr. Wilson did not contest the fact that his repeated attempts to fit crowns on three of Brooks' teeth was the cause of her pain.

During the jury's deliberations, the jury foreman, Richard Wesig, visited with his own dentist. On that occasion, Juror Wesig asked his dentist various questions relating to the possible causes of TMJ, the difficulty of performing the type of work at issue in this case, and the reasonableness of a $1.5 million verdict for this kind of injury. The dentist replied that TMJ could have many causes, that perhaps seventy-five to eighty percent of TMJ cases are caused by problems with the patient's bite, that a bite problem could have many causes itself (including imperfect dentistry), that he would not be satisfied with a dental crown that did not fit properly, and that $1.5 million seemed much too high an award for this sort of injury.

When the jury reconvened, Juror Wesig informed its members that he had spoken to his dentist, but, apparently, did not disclose the content of their conversation. Upon deliberation, the jury returned a verdict in favor of Brooks, awarding her $1.5 million in compensatory damages. Juror Wesig signed the verdict. Only one of the eight jurors, John Lampley, did not.

Dr. Wilson moved for a new trial, pursuant to Civ.R. 59, based upon a charge of excessive damages. Subsequently, upon learning of Juror Wesig's conversation with his dentist, Dr. Wilson again moved for a new trial, based upon juror misconduct. This motion was supported by the affidavit of Juror Wesig's dentist detailing their conversation, the affidavit of Juror Lampley, stating that Juror Wesig told the jury that he had spoken with his dentist, and the affidavit of Juror Wesig, affirming the truth of the other two affidavits.

Before ruling upon the motions for new trial, the trial court reviewed the entire record. It determined that a new trial was not warranted and denied both motions. Dr. Wilson appeals, asserting three assignments of error:

### Assignments of Error 1 and 2

"A new trial is warranted in a dental malpractice case where a juror seeks opinions of a non-testifying dentist during trial and prior to deliberations.

---

1. Brooks married after the initial pleadings were filed in this case. Her surname is now Stewart. We refer to her by her former name, in conformity with the case caption.

"It was an error for the trial court to deny defendant's motion for a new trial based upon the juror misconduct committed during trial and prior to deliberations."

In his first two assignments of error, Dr. Wilson argues that the trial court was required to order a new trial because of Juror Wesig's misconduct.

Civ.R. 59(A) allows a trial court to grant a new trial upon the motion of either party. It provides:

"(A) Grounds. A new trial may be granted to all or any of the parties and on all or part of the issues upon any of the following grounds:

"(1) Irregularity in the proceedings of the * * * jury * * *, by which an aggrieved party was prevented from having a fair trial;

"(2) Misconduct of the jury or prevailing party[.]"

This court has recently affirmed that "the decision not to grant a motion for new trial is within the discretion of the trial court." *Bennett v. Broadwater* (Aug. 31, 1994), Summit App. No. 16724, unreported, at 3, 1994 WL 466709. A reviewing court will not reverse such a decision absent an abuse of that discretion. *Verbon v. Pennese* (1982), 7 Ohio App.3d 182, 184, 7 OBR 229, 231, 454 N.E.2d 976, 979. Consequently, this court is not free to reverse the denial of Dr. Wilson's motions for new trial, unless we find that the trial court's action reflected an unreasonable, arbitrary, or unconscionable attitude. *Cedar Bay Constr., Inc. v. Fremont* (1990), 50 Ohio St.3d 19, 22, 552 N.E.2d 202, 205. Courts will find such an abuse only in the rare instance where a decision is so grossly violative of fact and logic that it demonstrates a perverse will, a defiance of judgment, undue passion, or extreme bias. *Huffman v. Hair Surgeon, Inc.* (1985), 19 Ohio St.3d 83, 87, 19 OBR 123, 126–127, 482 N.E.2d 1248, 1252.

We do not find such an abuse in this case. The leading Ohio case addressing whether a new trial should be granted because of juror misconduct is *Armleder v. Lieberman* (1877), 33 Ohio St. 77, in which the Ohio Supreme Court held:

"Where there has been irregularity or misconduct on the part of the jury, which might affect its judgment, or improperly influence the verdict, a new trial should be granted. Where, however, it clearly appears that no improper effect could arise from the alleged misconduct, the verdict should stand." *Id.* at paragraph one of the syllabus.

The court elaborated on this rule as follows:

"Upon the whole, we think the rule that will best secure the desired result would be, that, in cases where the irregularity or misconduct of the juror appears to have operated in favor of the successful party, and as a necessary consequence,

to the prejudice of the unsuccessful party, a new trial should be granted. On the other hand, where it appears that it has produced no such result, the verdict should be permitted to stand.

"Any attempt on the part of the prevailing party, his agent, or attorney, on or over the jury, resulting in an irregularity or misconduct of the jury, would be cause for a new trial; but in a civil action, where the prevailing party is wholly free from fault, and the irregularity or misconduct of the jury, or a juror, is free from intention of wrong, and has in no appreciable way affected the verdict, it should not be disturbed." *Id.* at 84.

This court recently applied the reasoning in *Armleder* to a case in which three jurors had visited the scene of the accident, during the trial. In that case, this court focused on the possibility that an improper effect could arise as a result of the misconduct. We held that "[w]here it clearly appears that no improper effect could arise as a result of the misconduct, the verdict should stand." *McDonald v. Akron* (1993), 86 Ohio App.3d 209, 211, 620 N.E.2d 230, 231–232.

The Lucas County Court of Appeals, in *Blitz v. Art Iron, Inc.* (Nov. 16, 1984), Lucas App. No. L-84-069, unreported, 1984 WL 14416, considered whether a trial court is required to order a new trial upon proof of juror misconduct similar to Juror Wesig's conduct in this case. In that personal injury case, the costs and degree of nursing skill required to provide home care for the plaintiff were hotly contested. Before or during deliberations, a juror questioned an uninvolved pharmacist about details bearing on these questions. The juror then informed her fellows that she had had this conversation, but did not reveal its contents. The jury returned a verdict for the plaintiff, awarding her $1,958,000. The court refused to reverse the trial court order denying the defendant's motion for new trial because, in spite of the juror's reprehensible conduct, there had been no prejudice to the defendant. The court found that the juror had obtained no information that had not been presented at trial.

Likewise, in the case before us, even though Juror Wesig questioned his dentist about issues that were the focus of the dispute, he obtained no information that had not already been presented at trial, and from both sides. Also, as in *Blitz,* the offending juror appears to have been the only juror exposed to this illicit information. There is no evidence that Juror Wesig conveyed the contents of his conversation to the other jurors. Six other jurors found in favor of Brooks, without the benefit of any additional input.

In spite of Juror Wesig's reprehensible conduct, this court can find no prejudice to Dr. Wilson and, therefore, the trial court was not required to order a new trial. Dr. Wilson's first and second assignments of error are overruled.

## Assignment of Error 3

"The trial court erred by not granting defendants a new trial due to excessive damages given under the influence of passion or prejudice or by not considering a remittitur."

In his third assignment of error, Dr. Wilson asserts that the trial court was required to order a new trial because the jury awarded compensatory damages of $1.5 million. He argues that the size of the award indicates that the jury impermissibly considered future damages. He asserts that, apart from such a consideration, the verdict would be against the manifest weight of the evidence. In his view, that improper consideration, along with the fact that the award is in the exact amount requested by Brooks, is evidence that damages were awarded under the influence of passion or prejudice.

In rebuttal, Brooks contends that the jury's verdict reflects its judgment that Dr. Wilson's testimony was unreliable. She argues that the jury is entitled to reject his testimony and base its verdict solely on the evidence she presented. Brooks further argues that her evidence was probative enough to support the jury's consideration of future damages. In her view, the verdict is not excessive compensation for the harm she has already endured and that she will probably endure in the future.

In addition to the grounds discussed under Assignments of Error 1 and 2, it is within a trial court's discretion to grant a new trial where a party has been awarded "[e]xcessive or inadequate damages, appearing to have been given under the influence of passion or prejudice[.]" Civ.R. 59(A)(4).

The parties both assume that the verdict in this case was based, in some part, on an assessment of future damages. They disagree as to whether that issue was properly before the jury. If it was, then the evidence before the jury was probative enough to support a substantial award, and the trial court correctly allowed the verdict to stand. If it was not, then the evidence of past and current harm may not have been strong enough to support an award of this magnitude, and a new trial would have been allowed. It bears repeating that, even if a new trial is permitted, pursuant to Civ.R. 59, it is not required, absent an abuse of discretion, as discussed above. In order to find such an abuse in this case, this court would have to hold (1) that it was improper for the jury to consider future damages, and (2) that the verdict was so excessive in light of the evidence going to past and current harm, that only a trial court demonstrating a perverse will, a defiance of judgment, undue passion, or extreme bias (*Huffman v. Hair Surgeon, Inc.* [1985], 19 Ohio St.3d 83, 87, 19 OBR 123, 126–127, 482 N.E.2d 1248, 1252) could have denied a motion for new trial.

Dr. Wilson correctly cites the rule that "there must be expert evidence as to future pain and suffering or permanency where the injury is subjective in character." *Day v. Gulley* (1963), 175 Ohio St. 83, 86, 23 O.O.2d 382, 384, 191 N.E.2d 732, 734. In this case, there was expert evidence that Brooks' pain and need for treatment would continue into the indeterminate future. Brooks' dental and TMJ/MPD expert testified that Brooks would continue to need a dental splint into "the predictably near future." He spoke of the need to repair and replace that appliance every four or five years and the need to monitor her myofacial pain "at least a couple of times a year." In addition, he testified to her ongoing need for antidepressants (used for pain relief), physical therapy, and psychotherapy. We hold that future damages were properly before the jury and that the verdict was not against the manifest weight of the evidence.

Even without evidence of future damages, the verdict would not necessarily be excessive. Brooks offered ample evidence of the harm she had already endured as a result of Dr. Wilson's treatment. She testified to the excruciating pain she has experienced on a continuing basis, and several treating practitioners testified to their treatment for that pain and its causes. Friends and family members testified to the negative changes in Brooks' relationships and ability to engage in her normal activities. Her husband testified that the couple had wanted to have a child, but "that's not even a legitimate consideration for me because I know how she is on this medication and I wouldn't consider subjecting my developing child to the possible side effects of that medication." In light of this testimony, this court cannot find that the verdict was so excessive as to prove that it was rendered under the influence of passion or prejudice.

■ Dr. Wilson also argues that the trial court was required to order a remittitur, or a reduction of the verdict, in the absence of a new trial. When a trial court is faced with a verdict that is excessive as a matter of law, but one that does not appear to be influenced by passion or prejudice, the court may order a remittitur, with the consent of the prevailing party. *Lance v. Leohr* (1983), 9 Ohio App.3d 297, 298, 9 OBR 544, 544–545, 459 N.E.2d 1315, 1316. Neither remedy is required; remittitur is merely an alternative to a new trial, where some remedy is deemed appropriate. Though the award to Brooks is large, it is supported by credible, probative evidence and is not excessive. Neither a new trial, nor a remittitur, would have been appropriate under these circumstances.

Dr. Wilson's third assignment of error is overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

REECE, P.J., and COOK, J., concur.