DECISION AND JUDGMENT ENTRY
This is an appeal from a Highland County Common Pleas Court judgment denying a Civ.R. 59 Motion for New Trial filed by Ruth E. Jones, plaintiff below and appellant herein, during the course of her divorce from her ex-husband, Paul B. Jones, defendant below and appellee herein. The following errors are assigned for our review:[1]
FIRST ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ABUSED ITS DISCRETION BY ORDERING PLAINTIFF-APPELLANT TO PAY CHILD SUPPORT AT THE MAXIMUM AMOUNT PROVIDED UNDER THE OHIO CHILD SUPPORT GUIDELINES DESPITE THE EXISTENCE OF FACTORS SUPPORTING A DEVIATION FROM THE MAXIMUM AMOUNT."
SECOND ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ABUSED ITS DISCRETION BY ORDERING THAT PLAINTIFF-APPELLANT COULD NOT CLAIM ANY OF THE PARTIES' THREE MINOR CHILDREN AS DEPENDANTS FOR INCOME TAX PURPOSES."
A brief summary of the facts pertinent to this appeal is as follows. The parties married on December 31, 1986, in Greenfield, Ohio, and three (3) children were born as issue of that marriage, to wit: Sydney Jones (D.O.B. 4-14-87), Sara Jones (D.O.B. 3-16-88) and Sadie Jones (D.O.B. 5-17-92). Shortly after their marriage, the couple moved to Florida where appellee (a plumber by trade) found itinerant work on various construction projects up and down the coast.
The marriage began to fall apart in the early 1990s with each side blaming the other for its impending demise. Appellee claimed that his wife was having emotional outbursts and was unstable. Further, her unwillingness or inability to find a job was supposedly causing undue financial pressures for the household. Appellant claimed, on the other hand, that her husband was physically and emotionally abusive. The couple ultimately returned to Ohio in the summer of 1995 and took up residence in a duplex owned and shared by appellee's parents in Greenfield, Ohio.
Appellant commenced the action below on December 14, 1995, alleging gross neglect of duty and extreme cruelty on the part of her husband. She asked for a legal separation from him as well as custody of the children, child support and an equitable division of their marital debts and property. Appellee filed an answer and counterclaim which denied the accusations made by his wife, but then asked for a legal separation on the same grounds. He, too, sought custody of the minor children, together with support and an equitable division of property and debts.[2]
On March 15, 1996, appellee filed an amended counterclaim asking for a divorce from his wife on grounds of extreme cruelty, gross neglect of duty and incompatibility. Appellant answered on May 26, 1996, essentially admitting the allegations against her.[3] The matter came on for hearing before a magistrate over several days in the spring and summer of 1996. The August 15, 1996 decision recommended that the couple be granted a divorce on the grounds of incompatibility, that appellee be appointed interim residential parent of the minor children, that his wife be granted liberal visitation, and that no child support be ordered while the case was pending. On September 17, 1996, the trial court entered judgment adopting the Magistrate's recommendations. The court further ordered that all remaining issues (i.e. permanent custody, child support and distribution of property\debts) be decided at a later date.
Approximately one and a half (1 1/2) years elapsed until the May 2, 1998 final hearing at which time both sides stipulated to a property distribution. The primary issue of contention concerned the allocation of parental rights and responsibilities. Each party submitted considerable evidence on that point going to their own respective merits as a parent. In the end, on January 11, 1999, the trial court entered judgment naming appellee the permanent residential parent and legal custodian of the three (3) girls. Appellee received liberal visitation which included (during the school year) weekday visits from 2:40 PM till 6:00 PM with the assumption that she would feed them dinner and, during the summer, weekday visits from 7:15 AM to 5:00 PM. Each parent would have the girls on alternate weekends as well as a two (2) week period of uninterrupted vacation time. The court ordered appellant to pay child support in the maximum amount of $161.78 per month per child. The court awarded appellee the right to claim his daughters as dependents for federal tax purposes.
On January 25, 1999, appellant filed a Civ.R. 59 motion for new trial arguing that the trial court's judgment was against the manifest weight of the evidence. The gist of her argument was that she and her husband made roughly the same incomes and would each have the children for roughly the same amount of time. Under these circumstances, she concluded, it was unfair to order her to pay the maximum amount of child support and at the same time deny her the right to claim the children as dependents for federal income tax purposes. Appellant asked that the trial court deviate from the standard child support calculation in this case and/or award her the federal dependency exemptions for her daughters. Appellee filed a memorandum in opposition to this request and, on April 13, 1999, the trial court denied the motion. This appeal followed.
 I
We begin our analysis of this case by clarifying the issues presented for our review. Technically speaking, this appeal comes to us from the trial court's judgment overruling the Civ.R. 59 motion for new trial. It is well-settled law that the decision of whether to grant a motion for a new trial rests with the sound discretion of the trial court, see Brooks v. Wilson (1994),98 Ohio App.3d 301, 304, 648 N.E.2d 552, 554; Verbon v. Pennese
(1982), 7 Ohio App.3d 182, 184, 454 N.E.2d 976, 979; Siegel v.Mt. Sinai Hospital (1978), 62 Ohio App.2d 12, 23, 403 N.E.2d 202,210, and its decision will not be overturned on appeal absent an abuse of that discretion. See Weidner v. Blazic (1994), 98 Ohio App.3d 321,334, 648 N.E.2d 565, 574; Len Ran, Inc. v. Mellott
(1990), 63 Ohio App.3d 123, 129, 577 N.E.2d 1185, 1189; Berkey v.Senn (1989), 65 Ohio App.3d 288, 291, 583 N.E.2d 1027, 1029. Appellant does not contest the trial court's ruling on her motion, however, and she makes no argument that the court abused its discretion. Instead, her arguments on appeal are directed at the same underlying portions of the January 11, 1999, judgment entry with which she took issue in her motion for new trial. The better practice might have been to simply bring an appeal from that judgment rather than going through the process of a Civ.R. 59 motion.[4] Nevertheless, given that such motions have generally been viewed by us as substitutes for appeal, see e.g.Ford v. Tandy Transp., Inc. (1993), 86 Ohio App.3d 364, 384,620 N.E.2d 996, appellant would be well within her prerogative to simply ignore the ruling on her motion for new trial and direct her appeal toward the underlying issues addressed therein. With this in mind, we turn our attention to the individual assignments of error.
 II
Appellant argues in her first assignment of error that the trial court erred by ordering her to pay the maximum amount of child support due under the applicable guidelines. Appellant asserts that the trial court should have, in view of the circumstances present in the instant case, deviated from the guideline calculation.[5]
We begin our analysis of this argument from the standpoint of R.C. 3113.215(B)(1) which mandates that child support be calculated pursuant to the "basic child support schedule" set forth in subsection (D) of that statute. The amount of child support arrived at through use of that schedule is "rebuttably presumed to be the correct amount of child support due . . ." Id.
This statute, as well as the accompanying schedule and worksheet, "are mandatory in nature and must be followed literally and technically in all material respects." Pauly v. Pauly (1997),80 Ohio St.3d 386, 389, 686 N.E.2d 1108, 1111; Marker v. Grimm
(1992), 65 Ohio St.3d 139, 601 N.E.2d 496, at paragraph two of the syllabus.
There is no question in this case that the trial court calculated the child support amount pursuant to the financial and mathematical computations set out in R.C. 3113.215 and the schedule contained therein. The question, instead, is whether the trial court should have deviated from that sum and ordered a lower amount to be paid.
Deviation from the basic child support schedule is permitted under those circumstances in which strict adherence "would be unjust or inappropriate and would not be in the best interest of the child." Id. at (B)(3). In making that determination the court may consider, inter alia, the following factors:
"* * *
(d) Extended times of visitation . . .
* * *
(g) Disparity in income between parties or households;
* * *
 (1) The standard of living and circumstances of each parent and the standard of living the child would have enjoyed had the marriage continued . . ." Id.
The trial court must also set forth findings of fact in its judgment that would support deviation from the basic schedule.Id. at (B)(2)(c)(ii). Strict compliance with this requirement is mandated by the Ohio Supreme Court. See Marker, supra at 141,601 N.E.2d at 498; also see DePalmo v. DePalmo (1997), 78 Ohio St.3d 535,539, 679 N.E.2d 266, 269; Rock v. Cabral (1993), 67 Ohio St.3d 108,110; 616 N.E.2d 218, 221.
We note at the outset that appellant makes a strong argument for deviation in this case. The support worksheets submitted below set out a "combined annual income" of approximately $52,198.[6] of that amount, appellant earns roughly $25,158 (or 48% of the total) and her ex-husband earns roughly $27,040 (or 52% of the total). This is not a large disparity in incomes. Moreover, despite appellee being the residential parent and legal custodian, the minor children spend a considerable amount of time with their mother. Appellant has the girls for three (3) hours every weekday during the school year and it is presumed that she will feed them dinner. Appellant also gets physical custody of the girls for nearly ten (10) hours every weekday during the summer and, conceivably, could be feeding them every meal. Each side then receives visitation on alternating weekends. The argument can certainly be made that, from this schedule, appellant will be spending considerably more money on the children (particularly with respect to feeding them) than would the typical non-custodial parent.[7] However, after careful consideration of the facts in this case as well as the pertinent law, we decline to find any error within the trial court's judgment in refusing to deviate from the standard child support calculations set out in R.C. 3113.215.
First, we note that the trial court set forth no factual findings, in either the January 11, 1999 decree or the January 25, 1999 entry overruling the motion for new trial, which would support a deviation from the basic guidelines as required by R.C.3113.215(B)(2)(c)(ii). Any deviation would have therefore been erroneous. See Rock, supra at 110, 616 N.E.2d at 221; Marker,supra at 141, 601 N.E.2d at 498.
Second, it is not immediately apparent to us from the record that appellant ever requested a deviation from the standard schedule prior to the January 11, 1999 entry. The amount of support ordered by the trial court is roughly equivalent to the amount arrived at by appellant in her own worksheet and she makes no argument therein that deviation would be appropriate. She can thus arguably be deemed to have waived this issue by not raising it in a more timely fashion (i.e. prior to her motion for new trial).
Our third reason for rejecting appellant's argument is that she has not fully convinced us that deviation would have been appropriate under R.C. 3113.215(B)(3). She relies on the three (3) previously cited factors in support of her position that a lesser amount of child support should have been ordered. The first of the factors upon which she relies is that for "[e]xtended times of visitation" under subsection (B)(3)(d). Although appellant certainly has extensive visitation, we believe the "extended" visitation envisioned by this subsection applies to those instances in which the children are with the non-custodial parent for entire twenty-four (24) hour periods. Here, except for alternate weekends and some uninterrupted summer visitation, the children always return to their father's home in the evening. We also recognize that, while appellant will spend more to feed these children than typical noncustodial parents, there are numerous other incidental expenses incumbent with raising a child (e.g. clothing, school expenses, etc.) that will still remain the primary responsibility of their father as legal custodian.
We are equally unconvinced that a disparity of incomes (under subsection (B)(3)(g) of R.C. 3113.215) supports a deviation. As aforesaid, the respective incomes of these parties are very close to one another. Appellant argues in her brief that there will be a greater disparity once her monthly child support payments are taken into account. However, the incomes to which the statute refers are those that exist prior to deduction for these sorts of expenses.
The final factor upon which appellant relies, that the standard support amount would decrease her standard of living and that of her daughters under R.C. 3113.215(B)(3)(1), is equally unavailing here. Again, the parties have very similar incomes. Their divorce and the fact that two households must now be maintained rather than one, decreases the standards of living for the entire family. We find nothing in the record to suggest that this decrease will be any more severe for appellant that it would be for appellee.
Finally, and perhaps most importantly, the decision of whether or not to deviate from the standard support guidelines is a matter within the sound discretion of the trial court. SeeCarpenter v. Reis (1996), 109 Ohio App.3d 499, 504,672 N.E.2d 702, 706; also see Todd v. Augustin (Aug. 10, 1999), Scioto App. No. 98CA2585, unreported; Higgins v. Danvers (Nov. 6, 1997), Cuyahoga App. No. 71352, unreported; Donaldson v. Donaldson (Jan. 30, 1997), Franklin App. No. 96APF06-766, unreported. Its decision will not be reversed by us absent a showing of an abuse of that discretion. See Barney v. Barney (Mar. 4, 1997), Franklin App. No. 96APF06-954, unreported; Rientjes v. Rientjes (Oct. 18, 1995), Hamilton App. No. C-940787, unreported. An abuse of discretion is more than an error of law or judgment; it implies that the trial court's attitude is unreasonable, arbitrary or unconscionable. See Landis v. Grange Mut. Ins. Co. (1998),82 Ohio St.3d 339, 342, 695 N.E.2d 1140, 1142; Malone v. Courtyardby Marriott L.P. (1996), 74 Ohio St.3d 440, 448, 659 N.E.2d 1242;Steiner v. Custer (1940), 137 Ohio St. 448, 31 N.E.2d 855 at paragraph two of the syllabus. In order to have an abuse of discretion, the result must be so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias. Nakoff v. Fairview Gen. Hosp. (1996), 75 Ohio St.3d 254,256, 662 N.E.2d 1, 3. Further, when applying the abuse of discretion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court. In re JaneDoe 1 (1991). 57 Ohio St.3d 135, 138, 566 N.E.2d 1181, 1184; Berkv. Matthews (1990), 53 Ohio St.3d 161, 169, 559 N.E.2d 1301,1308. This is an onerous standard to meet and we cannot conclude that it was met here.
As stated in the outset of our analysis, appellant makes a compelling case that some deviation from the standard child support guidelines might have been justified in this case. It may well be that some members of this Court may have come to a different conclusion had any of us been charged with deciding whether to deviate from those guidelines. The abuse of discretion standard, however, requires more than just showing that members of a reviewing court might have exercised their discretion a little differently. Wolfe v. Wolfe (Jul. 30, 1998), Scioto App. No. 97CA2526, unreported; Conner v. Renz (Dec. 29, 1994), Athens App. No. 94CA1605 94CA1606, unreported. Further, as was aptly noted by our colleagues on the Second District Court of Appeals, there is no authority whatsoever "for requiring a trial court to deviate from the child support guidelines merely because a deviation would be permissible or even desireable." (Emphasis added.) Fitzgerald v. Fitzgerald (Jan. 24, 1997), Montgomery App. No. 15982, unreported. Appellant cites us to no authority of law, and we have found none in our own research, in which a trial court has ever been deemed to have abused its discretion by refusing to deviate from the standard child support guidelines. We do not rule out the possibility that some case down the road may warrant such a finding, but this is not the case for such a ruling. In short, we find no abuse of discretion and thus no error in the trial court's refusal to order a lesser amount of child support in the cause sub judice. The first assignment of error is accordingly overruled.
 III
Appellant argues in her second assignment of error that the trial court erred by refusing to allocate to her the federal tax dependency exemptions for the three (3) girls. We disagree. The dependency exemption afforded under federal tax law is generally given to the custodial parent. See Section 152(e), Title 26, U.S. Code; also see 3 Ohio Family Law and Practice (1994) 83, § 36.15. However, it may be awarded to the noncustodial parent if such an award "would produce a net tax savings for the parents, thereby furthering the best interest of the child." Singer v. Dickinson
(1992), 63 Ohio St.3d 408, 588 N.E.2d 806, at paragraph two of the syllabus; also see Hughes v. Hughes (1988) 35 Ohio St.3d 165,518 N.E.2d 1213, at the syllabus (allowing dependency exemption to be awarded to noncustodial parent). This tax savings is achieved only if the noncustodial parent falls into a higher tax bracket than the tax bracket of the custodial parent. Singer,supra at 415, 588 N.E.2d at 812; also see Bobo v. Jewell (1988),38 Ohio St.3d 330, 333, 528 N.E.2d 180, 183. Appellant failed to demonstrate that this would be the case here.
Little in the way of tax information was ever adduced as evidence during the proceedings below. The most which this Court can glean from the record is that both parties earned in excess of $22,100 which appears to put them in a twenty-eight percent (28%) marginal bracket. See Section 1(c), Title 26, U.S. Code.[8] Appellant therefore has not establish a "net tax savings" that would justify awarding the exemptions to her rather than her ex-husband. For these reasons, the second assignment of error is without merit and is consequently overruled.
Having reviewed both the errors assigned and argued in the briefs, and finding merit in neither of them, the judgment of the trial court is hereby affirmed.
JUDGMENT AFFIRMED.
[1] Appellant's brief does not contain a separate statement of the assignments of error as required by App.R. 16(A)(3), see
Whiteside, Ohio Appellate Practice (1999 Ed) 93, § T5.13, and therefore we have taken these from the table of contents included therein.
[2] It is worth noting at this juncture that Ohio law imposes a six (6) month residency requirement before somebody can file an action for divorce. See R.C. 3105.03. The parties herein had not yet been living in the state for that length of time when this action was commenced. Thus, their initial claims were for legal separation rather than for divorce.
[3] Appellant's answer directly admitted the allegation of incompatibility, but failed to address the other two (2) allegations (i.e. gross neglect of duty and extreme cruelty). Thus, they were deemed admitted through operation of Civ.R. 8(D).
[4] This is particularly true when one considers that the basis for her motion, i.e. that the judgment was against the manifest weight of the evidence under Civ.R. 59(A)(6), did not really apply in this case. Appellant's argument was not so much that the court's decision was unsupported by the evidence, but rather that it was fundamentally unfair when the issues of child support and the dependency exemption(s) were compared to the amount of time that she was would have physical custody of the girls.
[5] The court ordered appellant to pay $161.78 per month per child. This translates into a yearly payment of $5,824.08 which is essentially equivalent to the support amount arrived at by appellant in her worksheet below ($5,830).
[6] We denote these as approximate figures so as to account for the slight discrepancy in incomes reported on the two (2) worksheets submitted below.
[7] Nothing in our comments here should be misconstrued as criticism for the custody arrangement that was ordered below. To the contrary, it is in the best interest of almost every child to spend as much time as possible with both parents and we commend the trial court for implementing such a schedule below.
[8] We acknowledge that marginal tax brackets are based on "taxable income" rather than "gross income." See Section 1, Title 26, U.S. Code. However, given the paucity of evidence regarding adjustments to the parties incomes herein, we are forced to rely on these figures from the child support worksheets submitted below.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Highland County Common Pleas Court, Domestic Relations Division, to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.
HARSHA, J.: Dissents
KLINE, P.J.: Concurs in Judgment Opinion
For the Court
 By:_____________________ PETER B. ABELE Judge
 NOTICE TO COUNSEL
Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.