This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Defendant-Appellant Falls Village Retirement Community, Ltd. has appealed from a judgment of the Summit County Court of Common Pleas that found in favor of Plaintiff-Appellee Kelly Jemson and from a subsequent order denying its motions for judgment notwithstanding the verdict, a new trial, and remittitur. This Court affirms.
 I
This matter stems from a promissory estoppel action Appellee brought against Appellant. In her complaint against Appellant, Appellee alleged that: 1) Appellant offered her employment; 2) she relied upon the offer when she terminated her then-existing employment; 3) her reliance was reasonable; and 4) she subsequently suffered damages because Appellant breached the employment agreement.
At a jury trial, Appellee testified that she is a licensed practical nurse, but that she has also worked as an admissions nurse. She testified that when she was offered the job at Falls Village, a retirement community with a nursing home and assisted living quarters, she was working at Ridgewood Place Skilled Nursing Facility fulltime as admissions director and overtime as a floor nurse. Appellee stated that her salary at Ridgewood Place was $32,000, which she equated to roughly $16.25 an hour.
Appellee testified that she first learned of Falls Village from Janice Collins, her friend and co-worker. Appellee testified that Collins informed her that Michael Francus, head of operations at Falls Village, was interested in hiring her for an admissions/marketing position at Falls Village. Appellee had worked for Francus in 1994 at a different nursing/retirement facility. Appellee stated that in February or March 2000 she began talking to Francus about working at Falls Village, which was still under construction. She testified that after several conversations he offered her a job and they discussed a start date, her salary, and company benefits. She testified that Francus told her that if she accepted the position she would also have the opportunity to become involved in his other nursing/retirement facilities. Appellee denied ever hearing about any conditions of employment at Falls Village and testified that she would never have quit her job at Ridgewood Place if she thought Francus' offer was conditional.
When questioned about her potential salary at Falls Village, Appellee responded: "We agreed on $40,000." Appellee testified that she accepted Francus' offer and gave her thirty-day notice at Ridgewood Place on September 18, 2000. On October 4, 2000, Appellee was fired from Ridgewood Place. When asked at trial why she decided to switch jobs, Appellee explained that "I really liked Ridgewood Place, but [Francus] made this offer just sound — you know, it was a career move, there was a lot of opportunity there, and I felt like, you know, I should maybe move ahead."
Appellee testified that when she arrived for a scheduled meeting with the Falls Village human resources representative, she was told that Francus had rescinded his offer of employment. Appellee testified that, despite her attempts, she never made contact with Francus and never talked to anyone from Falls Village again. She testified that she looked for another job and found one in about three and one-half weeks. Appellee testified that her current job, as a nurse in a lock-down psychiatric unit, is "worse" than her former job at Ridgewood Place. She explained that she is only making $16 an hour, has to pay $50 every two weeks for medical coverage, works from six in the morning until six at night, works every other weekend, and now works on holidays. Appellee testified that when she worked at Ridgewood Place she held a more senior position, made more money, did not have to pay for medical coverage, worked a better shift, and did not work weekends or holidays. Appellee testified that she is still looking for an administrative/marketing position.
Appellee testified that if she had remained at Ridgewood Place she would have worked forty hours a week at $16.25 in her admissions position and one hundred twenty hours a month at $17.50 in her overtime floor nurse position. She calculated that from the time she was terminated at Ridgewood Place until she found a new job she lost $1,960 in wages from her admissions position and $2,100 in wages from her floor nurse position.
On cross examination, Appellant's counsel established that in 1998 Appellee made $29,000, and in 1999 and 2000 she made $33,000. Appellant's counsel pointed out that Appellee stated that she started working at Ridgewood Place in January 1999, but in fact she began in November 1999. When questioned about the discrepancy, Appellee answered that she had simply made a mistake with the months. Appellant's counsel then noted discrepancies in Appellee's answers to questions concerning her beginning salary at her current job. Appellant's counsel also pointed out that Appellee testified that she did not know of any conditions to her employment at Falls Village, but that in discovery materials she admitted that Francus wanted specific information and certain acts performed before she could start working at Falls Village.
While being questioned by Appellant's counsel, Appellee admitted that even though she was terminated from her admissions position, she could have still worked her overtime position at Ridgewood Place. She also acknowledged that she and Francus never signed any written employment agreements. Appellee also admitted that after she was terminated she went on vacation out of state and that she never called Francus and told him she was fired from Ridgewood Place.
Francus, testifying for Appellant, stated that Collins, who he also previously employed, informed him that Appellee was interested in a position at Falls Village as admissions director of the nursing home. He testified that over an eight to nine month period he talked to Appellee about Falls Village and the possibility of Appellee working there. Francus testified that he told Appellee to gain experience in administration and then some day he would look to hire her for Falls Village.
When asked about any offers he made to Appellee, Francus responded: "What I did was offer her a conditional offer of employment." He continued: "The conditional offer of employment was based on, number one, that she work her notice period, and that she provide to me documentation of what her present pay and benefit package was." Francus testified that he gave her the conditional start date of October 23, 2000. He testified: "My offer to her was — I would match her current salary and benefit package, and then we would work out an incentive program based on census, admissions, those gauges one uses when you are dealing with nursing home admission, to get her to the salary she would like to earn, which was $40,000." Francus testified that he withdrew the conditional offer of employment on October 9 or 10, 2000, because Appellee did not provide the forms he had requested and because she was terminated from Ridgewood Place. He also testified that he heard through other workers at Ridgewood Place that Appellee was not doing her job well.
Collins, an administrator at Ridgewood Place, also testified at the trial. It is undisputed that she was present during most of the conversations between Francus and Appellee. Collins testified that during one conversation Francus offered Appellee a position and that he told Appellee her salary would match her salary at Ridgewood Place. Collins stated that, pursuant to Ridgewood Place policy, Appellee was terminated soon after she gave her notice. She testified that one of Francus' employees had told her that she was not satisfied with Appellee's performance as a marketing representative. Collins also testified that Francus offered her (Collins) a job as an administrator at Falls Village, but then told her she could not work there because they were both involved in Appellee's lawsuit and could not talk about the case.
After a jury trial, Appellee was awarded a judgment of $25,000. Appellant has appealed the jury's decision, asserting two assignments of error.[1]
 II Assignment of Error Number One "THE TRIAL COURT'S DENIAL OF [APPELLANT'S] `MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT OR, IN THE ALTERNATIVE, FOR A NEW TRIAL OR REMITTITUR' WAS AN ERROR."
In its first assignment of error, Appellant has argued that the verdict was not supported by the evidence and should have been vacated. Appellant has asserted that it is entitled to a new trial because of the errors of law in the case, because the award of damages was excessive and granted under the influence of passion and prejudice, and because Appellee's answers during depositions, in interrogatories, and at trial varied. In the alternative, Appellant has claimed that a remittitur is necessary because the jury award is excessive.
 Motion for Judgment Notwithstanding the Verdict
This Court reviews Appellant's motion for judgment notwithstanding the verdict, pursuant to Civ.R. 50(B), de novo. Schafer v. RMS Realty
(2000), 138 Ohio App.3d 244, 257, appeal not allowed (2000),90 Ohio St.3d 1472; Reitz v. Akron Aerie No. 555 Fraternal Order ofEagles, 9th Dist. No. 20454, at 5, 2001-Ohio-1727. In ruling on a motion for judgment notwithstanding the verdict, the evidence is construed most strongly in favor of the nonmovant, who is also given the benefit of all reasonable inferences from the evidence. Ruta v. Breckenridge-Remy Co. (1982), 69 Ohio St.2d 66, 68; see, also, Buehler v. Falor, 9th Dist. No. 20673, at 6, 2002-Ohio-307. This Court must not weigh the evidence or the credibility of the witnesses. Osler v. Lorain (1986), 28 Ohio St.3d 345, syllabus. A motion for judgment notwithstanding the verdict should be denied if there is substantial evidence upon which reasonable minds could come to different conclusions on the essential elements of the claim.Posin v. A.B.C. Motor Court Hotel (1976), 45 Ohio St.2d 271, 275.
Appellant has not alleged that it is entitled to judgment notwithstanding the verdict because Appellee's promissory estoppel claim is unsupported by substantial evidence. Rather, Appellant has argued that the jury award is not supported by the evidence and contrary to law. Such an argument is not appropriate on a motion for judgment notwithstanding the verdict because Civ.R. 50(B) provides the means to challenge the jury's verdict, not the jury's award of damages. Appellant's assertion that the evidence does not support the award of damages is better placed in its argument for a new trial and remittitur, and will be addressed by this Court therein.
 Motion for a New Trial
As an alternative to its motion for judgment notwithstanding the verdict, Appellant moved for a new trial pursuant to Civ.R. 59(A)(4). Appellant argued that the jury awarded excessive damages under the influence of passion or prejudice. Specifically, Appellant asserted that statements made by Appellee's counsel during closing arguments caused the verdict to be based on passion and prejudice.
Civ.R. 59 allows a trial court to grant a new trial upon the motion of either party. Pursuant to Civ.R. 59, "[a] new trial may be granted to all or any of the parties and on all or part of the issues upon * * * the following grounds: * * * (4) [e]xcessive or inadequate damages, appearing to have been given under the influence of passion or prejudice[.]" This Court reviews a trial court's ruling on a motion for a new trial for an abuse of discretion. Brooks v. Wilson (1994), 98 Ohio App.3d 301, 304, appeal not allowed (1995), 71 Ohio St.3d 1494. "`Abuse of discretion,' in relation to the [disposition] of a motion for a new trial[,] implies an unreasonable, arbitrary[,] or unconscionable attitude upon the part of the court." Poske v. Mergl (1959), 169 Ohio St. 70, 75. Before this Court will disturb the trial court's discretion, the record must clearly demonstrate "highly improper argument by counsel tending to inflame [the] jury." Larrissey v. Norwalk Truck Lines, Inc. (1951), 155 Ohio St. 207,219.
"The size of a verdict, without more, is insufficient to prove passion or prejudice." Buehler, at 9, citing Weidner v. Blazic (1994),98 Ohio App.3d 321, 334-335. Further, "it is the function of the jury to assess the damages and, generally, it is not for a trial or appellate court to substitute its judgment for that of the trier of fact." Villellav. Waikem Motors, Inc. (1989), 45 Ohio St.3d 36, 40. "There must be something contained in the record which the complaining party can point to that wrongfully inflamed the sensibilities of the jury." Shoemaker v.Crawford (1991), 78 Ohio App.3d 53, 65. In determining whether passion or prejudice affected an award of damages so as to warrant a new trial, an appellate court should "consider the amount of the verdict, whether the jury considered incompetent evidence, improper argument by counsel or other improper conduct which can be said to have influenced the jury."Dillon v. Bundy (1991), 72 Ohio App.3d 767, 774.
After thoroughly reviewing the record, this Court finds that the trial court did not abuse its discretion in denying Appellant's motion for a new trial. The record is devoid of instances of conduct so highly improper or inflammatory as to amount to clear evidence that the verdict was the product of the jury's passion or prejudice. This Court is not persuaded by Appellant's arguments that Appellee's counsel's statements during closing arguments rose to the level of highly improper. Appellant has argued that the following statements in particular led to a jury award based on passion and prejudice:
 "Let me tell you what happened here. Mr. Francus bought a building, and the construction, it was going very slow, and he had a dispute with the builder, and he was six to eight months behind. And he decided all of a sudden, gee, I got Kelly coming in, I don't have any work for her. Despite what he says, oh, we have all these other projects going, we have all these other projects. He then said to himself, gee, you know, I could wait a couple months, I could save 10, $15,000, bring somebody in in January or February, part time or for less. And I guarantee the person he filled that spot with — who had no experience, by the way — was substantially less than the $40,000 that my client was going to get. That's what happened. It was an opportunity to save the money at my client's expense. * * * [S]end a message to this boy who holds people like a little boy does toys in a box, throws away the old ones and hangs on to the new ones. And that's what this is about. Send a message. Give my client $35,000 for this nonsense, because what he did is wrong."
This Court initially notes that Appellant failed to object to the statements during closing arguments, or when the trial court asked either side if it had anything to discuss with the court. Further, the trial court clearly instructed the jury that closing arguments are not evidence and should not be treated as such. A closing argument that is passionate does not automatically establish that the jury award is a result of passion or prejudice in the jury; a connection must be shown between the statements and the jury award. In the case sub judice, Appellant has failed to make such a connection.
Appellant has also claimed that Appellee's answers to questions concerning her former and current duties and salaries were inconsistent and the result of attorney misconduct. This Court finds no merit in such a theory because Appellant had the opportunity on cross examination to point out the discrepancies and ask Appellee about them. In fact, a review of the transcript shows numerous instances where Appellant attempted to catch Appellee in an alleged lie. Moreover, Appellant's arguments that the discrepancies in Appellee's testimony are the result of her counsel's failure to supplement the record is not supported by the record.
Appellant has failed to establish that incompetent evidence, improper argument, and improper conduct led the jury to award $25,000 in damages based on passion and prejudice. Absent such evidence, this Court cannot find that the trial court abused its discretion.
 Motion for Remittitur
Appellant also filed an alternative motion for remittitur. Appellant has argued that the damages awarded to Appellee are excessive, not based on the facts, and contrary to the jury instructions. When a jury award is found to be excessive, but is not the result of passion or prejudice, the court may order remittitur. Lance v. Leohr (1983), 9 Ohio App.3d 297,298. Remittitur is not required, but is merely an alternative to a new trial. This Court reviews a trial court's decision to deny remittitur for an abuse of discretion. Betz v. Timken Mercy Med. Ctr. (1994),96 Ohio App.3d 211, 218.
At the close of the trial, the trial court instructed the jury on damages as follows:
 "If you find for the plaintiff, you will determine by the greater weight of the evidence the amount of money, if any, that will reasonably compensate her for the actual damages she sustained. She would then be entitled to fair and reasonable compensation for her loss."
 "The remedy granted for [promissory estoppel] may be limited as justice requires." 1 Restatement of the Law 2d, Contracts (1981), Section 90(1); see, also, The Limited Stores, Inc. v. Pan American World Airways, Inc., 65 Ohio St.3d 66, 73, 1992-Ohio-116. The Restatement's position on remedies for promissory estoppel actions allows for flexibility in determining an award of damages. See Valley Bank v. Dowdy (S.D. 1983), 337 N.W.2d 164, fn. 2.
This Court cannot find that the trial court's denial of Appellant's motion for a remittitur constitutes an abuse of discretion, because Appellant has failed to demonstrate that the jury award was excessive. The jury instructions allow for compensation for actual damages which, in this case, could include damages as a result of lost wages, loss of position, loss of benefits, change in working conditions, and change in work schedule. Contrary to Appellant's assertions, the trial court's instructions did not limit actual damages to lost wages. Once the jury found in favor of Appellee, it had the discretion to grant an award for actual damages Appellee suffered as a result of her reasonable reliance, which was to her detriment, on Appellant's promise of employment. This Court finds that the trial court followed the Restatement by allowing a remedy that justice required and did not abuse its discretion in upholding the jury award. Based on the foregoing, Appellant's first assignment of error is overruled.
 Assignment of Error Number Two "THE VERDICT OF THE JURY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND CONTRARY TO LAW."
An appellant bears the burden of affirmatively demonstrating error on appeal. Ivery v. Ivery (Jan. 12, 2000), 9th Dist. No. 19410, at 2. Pursuant to App.R. 12(A)(2), this Court may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based. The brief of the appellant must contain an argument with citations to the authorities, statutes, and parts of the record on which the appellant relies. App.R. 16(A)(7). It is not the duty of this Court to search the record for evidence to support an appellant's argument of an alleged error. See State v. Watson (1998), 126 Ohio App.3d 316, 321, appeal not allowed (1998), 82 Ohio St.3d 1413.
This Court finds that Appellant's second assignment of error fails to affirmatively demonstrate an error. See Angle v. W. Res. Mut. Ins. Co. (Sept. 16, 1998), 9th Dist. No. 2729-M, at 2. Appellant's brief does not address its assignment of error that the jury's verdict in favor of Appellee was against the manifest weight of the evidence. Rather, it appears that Appellant intended to argue that the award of damages was against the manifest weight of the evidence. This Court will not revisit the damages issue here, as Appellant's arguments concerning the jury award were adequately addressed in our discussion of the first assignment of error. Accordingly, Appellant's second assignment of error is overruled.
 III
Appellant's assignments of error are overruled. The judgment of the trial court is affirmed.
SLABY, P.J., BATCHELDER, J. CONCUR.
[1] Appellant's brief attempts to address both of its assignments of error and all of its arguments in one discussion. This Court will take each assignment of error and argument in turn.