This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant, Sovereign Chemical Co., has appealed the decision of the Summit County Court of Common Pleas, granting appellee, American States Insurance Co., an order for a new trial. This Court reverses.
 I.
Appellant is a small business that held a commercial general liability insurance policy through appellee, an insurance company. In January of 1996 a lawsuit was filed against both appellant and appellant's president by a former employee named Sean Condren, and appellant's president retained legal counsel to represent them in the lawsuit. Sometime prior to April of 1996, appellant's president also contacted two insurance companies — State Farm, which provided the president with his personal policy, and appellee, which provided appellant with its commercial policy — to request their help in defending them in the lawsuit.
State Farm promptly responded that it would help fully defend its policyholder, appellant's president; it accepted the legal counsel appellant already had working on the Condren case and State Farm immediately offered to pay a certain amount of the attorney's fees throughout the duration of the lawsuit.
Appellee did not respond promptly. In May of 1996, when appellant's attorney got in touch with appellee's agent, appellee refused to defend or indemnify appellant on any of the Condren claims. Appellant's attorney responded that appellee was wrong to refuse to help its policyholder and she requested that appellee reconsider its position and obligations to appellant. Appellee's agent told appellant's attorney to continue to defend appellant while appellee sent the policy to one of its attorneys to investigate whether appellee owed coverage to appellant at all. Around June 6, 1996, appellant's attorney received a letter from appellee stating again its refusal to defend appellant.
The attorney investigating appellant's insurance coverage for appellee determined that appellee owed appellant a full defense on the Condren lawsuit. The attorney relayed this information to appellee's agent over the phone and in a letter. Appellee's agent told its attorney to draft a letter to appellant stating that appellee would only defend appellant on one claim of the Condren lawsuit, the invasion of privacy claim.
Appellant's attorney received the letter around July 10, 1996, stating appellee would now defend one claim for appellant, the invasion of privacy claim. Further phone calls and letters ensued between appellant's attorney and appellee's agents and attorney over appellee's obligation to defend appellant. In the meantime, appellant spent considerable time and money dealing with the Condren case against it, with no assistance from appellee.
In the end of August, appellee communicated to appellant's attorney that it would now defend the entire lawsuit for appellant, but only on the condition that appellant surrender control of its defense entirely to appellee, removing appellant's attorney so that appellee could appoint its attorney to appellant's defense.
Appellant did not want to lose its attorney on the Condren case and let appellee put a new attorney in her place so far along the legal process. Appellant asked appellee to let it retain its attorney for the Condren trial upon appellee's approval; appellee would not approve appellant's request. Appellant's attorney explained appellant's reservations about acquiring new counsel so late in the process, as well as possible conflict of interests in having appellee's attorney defend appellant in a case involving coverage appellee may owe on behalf of appellant's policy. Appellee continued to refuse appellant's request and the two parties hit an impasse on the issue for the next three months.
On November 11, 1996, appellee filed a complaint for declaratory judgment against appellant in the Summit County Court of Common Pleas. Appellee requested a declaratory judgment that appellee had no obligation to defend, indemnify or otherwise provide insurance coverage for appellant concerning the Condren lawsuit against appellant, including the claim for invasion of privacy that appellee had previously told appellant it would defend. On December 6, 1996, appellant answered appellee's suit against it and also filed a counterclaim, stating appellee had breached their contract and acted in bad faith against appellant. Appellant sought punitive damages from appellee.
Two months after appellant filed its counterclaim, appellee notified appellant that its policy premium for the upcoming year would increase by $4,735. Appellant paid the increased premium amount for the upcoming year. About six months later, appellee notified its agent to not renew appellant's policy for the upcoming policy year, even though several months remained before appellant's current policy year would end.
Appellee later sought summary judgment on three different occasions throughout 1998 and 1999 and the trial court denied all three motions. Finally, on May 7, 2001, the case between appellant and appellee went to jury trial. At the close of the evidence, appellee sought a directed verdict on appellant's counterclaim and the trial judge overruled the motion.
At the close of the trial the jury gave an unanimous verdict in favor of appellant and awarded appellant punitive damages. After the jury was discharged and the trial was concluded, a hearing was scheduled for all post-judgment motions by the parties. At that hearing, the trial court granted appellee a new trial on the issues of bad faith and punitive damages.
Appellant timely appealed and appellee timely cross-appealed. Appellant sets forth three assignments of error and appellee/cross-appellant sets forth one assignment of appeal.
 II. FIRST ASSIGNMENT OF ERROR "THE TRIAL COURT ERRED IN GRANTING A NEW TRIAL ON GROUNDS THE JURY'S VERDICT WAS INFLUENCED BY PASSION AND PREJUDICE WHERE THE COURT'S ONLY BASIS WAS THE VERDICT'S SIZE."
In its first assignment of error, appellant states that the trial court erred in granting appellee a new trial on grounds the jury's verdict in favor of appellant was influenced by passion and prejudice where the court's only basis was that the damages awarded were excessive. Appellant argues that appellee did not establish any proof of passion or prejudice against appellee and the jury considered proper evidence and argument in deciding reasonable damages awards for appellant. This Court agrees.
This Court has recently stated that "[w]hen reviewing the grant of a new trial on Civ.R. 59(A)(4) grounds, it has been held that the size of a verdict, without more, is insufficient to prove passion and prejudice."Frost-Balazowich v. Yehnert, 9th Dist. No. 20602, 2002-Ohio-1105, at ¶ 13, citing Weidner v. Blazic (1994), 98 Ohio App.3d 321, 334-335. "There must be something contained in the record which the complaining party can point to that wrongfully inflamed the sensibilities of the jury." Shoemaker v. Crawford (1991), 78 Ohio App.3d 53, 65.
This Court has also clarified that in order to determine "whether passion or prejudice affected a damage award so as to warrant a new trial, an appellate court should `consider the amount of the verdict, whether the jury considered incompetent evidence, improper argument by counsel or other improper conduct which can be said to have influenced the jury.'" Frost-Balazowich at ¶ 13, quoting Dillon v. Bundy
(1991), 72 Ohio App.3d 767, 774.
In the instant case, the record shows that the jury did not consider any incompetent evidence or improper argument by counsel. The jury did not witness any improper conduct by either appellant's counsel or appellee's counsel. The trial process went smoothly and the judge effectively controlled what evidence and arguments the attorneys could properly bring before the jury for the case. Both attorneys cooperated with the court's authority as to admissibility, respectfully submitted their arguments to the jury, and were considerate of each other's presentation of the case in controversy. Any evidence issues or arguments were properly addressed at sidebar between the attorneys and judge.
Both the volume and quality of testimony and exhibits provided by both appellee and appellant were more than adequate for the jury to reasonably determine its verdict in favor of appellant and the subsequent punitive damages appellant was entitled to receive from appellee. Once the jury found the appellee had breached its contract with appellant and acted in bad faith as an insurer for appellant, it had a reasonable basis for determining the amount of punitive damages it believed should be awarded to appellant under the facts of the case.
A new trial may not be granted on the basis of excessive damages "unless the movant is able to establish that the verdict resulted from jury passion and prejudice and that the damages were `so overwhelmingly disproportionate as to shock reasonable sensibilities.'"Frost-Balazowich at ¶ 12, quoting Pena v. Northeast Ohio EmergencyAffiliates, Inc. (1995), 108 Ohio App.3d 96, 104. The appellee in this case did not establish that the verdict resulted from jury passion and prejudice and the damages awarded appellant were not overwhelmingly disproportionate as to shock reasonable sensibilities.
Therefore, the trial court erred in granting appellee a new trial on such grounds. The appellant's first assignment of error is sustained.
 SECOND ASSIGNMENT OF ERROR "THE TRIAL COURT ERRED IN GRANTING A NEW TRIAL ON GROUNDS THE JURY'S JUDGMENT WAS AGAINST THE WEIGHT OF THE EVIDENCE WHERE SUBSTANTIAL AND OVERWHELMING EVIDENCE ON THE RECORD SUPPORTED THE JURY'S VERDICT."
In its second assignment of error, appellant states that the trial court erred in granting appellee a new trial on grounds that the jury's judgment was against the weight of the evidence. Appellant argues that there was indeed substantial and overwhelming evidence on the record in favor of appellant which clearly supported the jury's verdict for appellant. This Court agrees.
When reviewing the weight of the evidence, this Court applies the same test in civil cases as it does in criminal cases. Tewarson v. Simon
(2001), 141 Ohio App.3d 103, 115. "The [reviewing] court * * * weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." Id., citing State v. Thompkins (1997), 78 Ohio St.3d 380,387, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175.
To determine bad faith by an insurer, the jury had to apply the reasonable justification standard to the facts of the case. That standard states that "[a]n insurer fails to exercise good faith in the processing of a claim of its insured where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefor[e]." Zoppo v. Homestead Ins. Co.(1994), 71 Ohio St.3d 552, paragraph one of the syllabus.
Appellant notified appellee of the lawsuit filed against appellant by a former employee and requested appellee's help as its insurer. Appellant provided both testimony and exhibits which showed the jury that appellee was fully aware of appellant's legal situation and yet appellee delayed any response to appellant's request for help. Once appellee did respond to appellant, it denied any aid to appellant, even though the claims made against appellant fell within the policy coverage appellee owed to appellant.
Both appellant's president and appellant's defense attorney for the Condren lawsuit gave testimony of their many efforts to obtain appellee's help in defending the Condren lawsuit. The evidence showed that only after several phone calls and letters, did appellee acknowledge appellant's legal situation. Still, it hastily communicated that it would not cover any of appellant's defense. Once appellant's defense attorney persisted in explaining that appellee owed a defense for appellant under the language of the insurance policy, appellee belatedly acknowledged its responsibility to investigate its policy obligations to appellant in regard to covering its legal defense.
Appellee referred appellant's policy to an attorney to determine appellee's coverage obligations. That attorney testified to telling appellee it needed to fully cover appellant and that appellee told the attorney to draft the response letter to appellant that it would only cover one claim. The evidence showed that even though appellee was advised by its own attorney that it owed appellant a full defense in the Condren case, appellee told appellant it would only cover one claim, invasion of privacy, of the multiple claims appellant needed to defend itself against.
Letters supporting the attorney's testimony were presented to the jury, showing that appellee seemed to be trying to make the attorney its scapegoat in saying that the attorney relayed the response against appellee's authority. But contradictory testimony from appellee's own witnesses supported appellant's evidence that appellee did not intend to fully defend appellant and appellee did tell its attorney to relay to appellant that it would only cover one claim.
Testimony and exhibits supported appellant's position that it was not until months had passed and appellant's attorney continued to attempt to convince appellee that it had a duty to defend appellant that appellee changed its position and agreed to help defend all the claims against appellant. Even then, appellee's announcement to fully defend appellant carried with it conditions. Appellee ordered appellant to relinquish all control over its defense, including discharging of appellant's attorney (who had been working on the case for eight months at that point) so that appellee could pick one of its attorneys to defend appellant.
Even after appellant's attorney communicated that there were clear conflict of interest issues if one of appellee's attorneys defended appellant in the Condren suit, appellee still demanded to put its own attorneys in charge of the defense. Several witnesses and dozens of exhibits later, it was very reasonable for the jury to find the weight of the evidence to be against appellee as acting in bad faith toward appellant.
The evidence showed that appellee had no reasonable justification to delay a response to appellant, then only offer to help with one of the many claims against appellant, and then once it stated it would help appellant on all claims to not actually provide any financial or professional support to appellant. The trial court abused its discretion in granting a new trial on appellant's successful bad faith claim against appellee and the resulting punitive damages that the jury awarded in appellant's favor.
This Court finds that the trial evidence did provide substantial and overwhelming weight to support the jury's verdict of bad faith against appellee and punitive damages for appellant. Therefore, the trial court erred in granting appellee a new trial on such grounds. The appellant's second assignment of error is sustained.
 THIRD ASSIGNMENT OF ERROR "THE TRIAL COURT ERRED AS A MATTER OF LAW IN GRANTING A NEW TRIAL ON GROUNDS THE JURY INTERROGATORIES MISSTATED THE LAW WHERE: (1) AMERICAN STATES FAILED TO DEMONSTRATE THE MISSTATEMENT RESULTED IN ANY PREJUDICE; AND (2) AMERICAN STATES FAILED TO OBJECT TO THE INTERROGATORIES OR JURY'S ANSWERS PRIOR TO THE JURY'S DISCHARGE."
In its third assignment of error, appellant states that the trial court erred in granting appellee a new trial on grounds that two of the nine jury interrogatories misstated the law. Appellant specifically argues that appellee failed to demonstrate the supposed misstatement resulted in jury prejudice against appellee. Furthermore, appellant argues that appellee failed, after several opportunities, to object to either the interrogatories themselves or the jury's inquiries and judge's answers to those interrogatories or the completed interrogatories prior to the discharge of the jury. This Court agrees.
Generally, in civil cases, errors that arise during the course of the proceedings and are not brought to the attention of the trial court by objection, or otherwise, at the time they could be remedied, are waived.Lefort v. Century 21 — Maitland Realty Co. (1987), 32 Ohio St.3d 121,123. A party seeking to challenge the form of an interrogatory must do so before it is presented to the jury. Boewe v. Ford Motor Co. (1992),94 Ohio App.3d 270, 278-279.
At issue in this case were interrogatories seven and eight of the nine interrogatories the trial judge read to the jury; they dealt with the malice instruction of appellant's bad faith claim. The appellee now argues that the trial court erred in the way it stated interrogatories seven and eight, but not at any time throughout the course of the trial did appellee's attorney object to anything that dealt with these two interrogatories.
This record shows that after closing arguments, the jury was recessed while the judge walked through the entire jury instructions, including the jury interrogatories with both attorneys, before the judge read any of the instruction to the jury. During that time, appellee's attorney never objected to the wording of interrogatories seven and eight. The judge specifically asked the attorneys if there were any objections at the end of their review of the instructions and appellee's attorney failed to object at that time.
The trial judge then called the jury back into the courtroom and proceeded to read the instruction and the interrogatories to the jury and during this whole process of charging the jury the appellee's attorney did not object to the wording of interrogatories seven and eight.
The jury was dismissed to deliberate and they later summoned the court with questions regarding interrogatories seven and eight. The wording provided in both interrogatories involved stating "actual malice or conscious disregard" and the jury requested to underline the "conscious disregard" portion of the statement when answering both interrogatories. The judge allowed the jury to cross out the "actual malice" portion and underline the "conscious disregard" portion of the definition in both interrogatories and sent them back to finish deliberating. Again, appellee's attorney, present for the jury's questions here, failed to object to the judge's approval for the jury to use the "conscious disregard" wording only in interrogatories seven and eight.
The jury returned their verdict in favor of appellant. When the judge read the jury's answers to interrogatories seven and eight, "actual malice" was crossed out and the jury found that appellee had acted in a conscious disregard for appellant's rights and the jury consequently awarded punitive damages to appellant. When the judge read the jury's answers to the court, again, appellee's attorney failed to object to either the wording of interrogatories seven and eight or how the jury answered them in finding appellee guilty of bad faith against appellant. The jury was then excused from its service to the court. Even after the jury discharge, appellee's attorney did not note for the record that he had any problem with how interrogatories seven and eight had been adjusted or answered by the jury. The trial was concluded.
During the course of the proceedings, appellee's disapproval of interrogatories seven and eight were never brought to the attention of the trial court by objection, or otherwise, at the time they could be remedied. Appellee's attorney had several opportunities to object, both before the interrogatories were presented to the jury and after they received them, questioned them and returned their verdict, and he failed to do so at any time during the course of the trial. Therefore, appellee has waived its right to move for a new trial on this basis.
This Court finds that appellee failed to challenge the form of interrogatories seven and eight before they were presented to the jury, thus waiving its right to request a new trial. Therefore, the trial court erred in granting appellee a new trial on such grounds. The appellant's third assignment of error is sustained.
 III. CROSS ASSIGNMENT OF ERROR "THE TRIAL COURT ERRED IN DENYING SUMMARY JUDGMENT IN FAVOR OF AMERICAN STATES ON THE ISSUE OF BAD FAITH."
Appellee/cross-appellant's sole assignment of error states that the trial court erred in denying summary judgment in favor of appellee/cross-appellant on the issue of bad faith. This Court disagrees.
Pursuant to Civ.R. 56(C), summary judgment is proper if:
 "(1) [N]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmoving party." State ex. rel. Howard v. Ferreri (1994), 70 Ohio St.3d 587, 589. Doubts must be resolved in favor of the nonmoving party. Horton v. Harwick Chem. Corp. (1995), 73 Ohio St.3d 679, 686. A party moving for summary judgment bears an initial burden of pointing to "some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims." Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. (Emphasis sic.) When a moving party has met this initial burden, the nonmoving party "may not rest on the mere allegations of her pleading, but her response * * * must set forth specific facts showing the existence of a genuine triable issue." State ex rel. Burnes v. Athens Cty. Clerk of Courts (1998), 83 Ohio St.3d 523, 524.
In the instant case, appellee/cross-appellant first brought a cross-motion for summary judgment against appellant in late 1998. It raised the issue of appellant's allegation of bad faith on appellee/cross-appellant's part in its dealings with appellant. Both appellant and appellee/cross-appellant brought evidence, largely deposition testimony and various documents, that led the trial court to find that genuine issues of material fact did exist as to appellee/cross-appellant's bad faith.
Appellant brought adequate evidence that appellee/cross-appellant initially refused to defend appellant at all, and later would only defend Condren's invasion of privacy claim against appellant. Appellee/cross-appellant brought adequate evidence that appellee/cross-appellant consistently agreed to defend appellant regarding the Condren claims and was merely investigating the terms of the policy to better understand its coverage obligations to appellant. Therefore, there was clearly conflicting evidence as to the issue of appellee/cross-appellant's bad faith. The trial court concluded that appellee/cross-appellant's motion was not well taken and its request for summary judgment was properly denied on the bad faith issue.
The parties eventually went to trial over the bad faith issue, among other issues. Both sides presented evidence concerning appellee/cross-appellant's bad faith during the trial proceedings and the issue was extensively argued before the court. The jury, being the trier of fact in the end, clearly believed that all the evidence taken together was in favor of appellant because it returned an unanimous verdict for appellant, along with punitive damages for appellant.
This Court finds that genuine issues of material fact concerning appellee/cross-appellant's bad faith did exist at the time it sought summary judgment from the trial court. The bad faith issue was later resolved at trial by the jury against appellee/cross-appellant. Therefore, the trial court properly denied summary judgment in favor of appellee/cross-appellant on the issue of bad faith. The appellee/cross-appellant's sole assignment of error is overruled.
 IV.
Accordingly, appellant's three assignments of error are sustained. Appellee/cross-appellant's sole assignment of error is overruled. This Court reverses the judgment of the court of common pleas.
BATCHELDER, J. CONCURS.